SOUTHWESTERN ELECTRIC POWER CO.
& BEAVER WATER DISTRICT *v.*
Ted P. COXSEY, Chancellor

74-216                                    518 S.W. 2d 485

Opinion delivered January 27, 1975

*Richard L. Arnold, G. William Lavender, Leonard Greenhaw*
and *Walter R. Niblock,* for petitioners.

*James F. Dickson,* for Amicus Curiae, Carroll Electric
Cooperative Corp.

LYLE BROWN, Justice. Carroll Electric Cooperative Cor-
poration (Carroll) filed a petition for declaratory judgment.
The defendants, appellants here, were Southwestern Electric
Power Company (Swepco) and Beaver Water District
(Beaver). It was alleged that Swepco was furnishing electric

energy to Beaver and that such territory being serviced came under a certificate of convenience and necessity issued by the Arkansas Public Service Commission (APSC) to Carroll. The defendants demurred to the complaint, contending that the APSC had exclusive jurisdiction of the matter. The demurrers were overruled and Swepco and Beaver come to this court seeking a writ of prohibition directed to the Benton County Chancery Court. It is agreed that the single issue before us is whether APSC is the exclusive forum for the resolution of the dispute.

Carroll is a cooperative organization engaged in the sale of electric energy to its members in Benton County and surrounding areas. It operates in areas allocated to it by APSC. Swepco is in the same business in an area roughly described as the western one-fourth of the State, including certain allocated areas in Benton County. Beaver is a water district chartered by the Circuit Court of Benton County. It impounds, transmits and sells water to various municipalities in northwest Arkansas.

The APSC, several years ago, awarded to Carroll a certificate of convenience and necessity to serve consumers in Sections 4, 5, 6, 7, and 8 in Township 18 north, range 29 west in Benton County. In that area are located water pumps and a water treatment plant belonging to Beaver. In 1972 an electric service contract was executed between Swepco and Beaver. The contract provided for electric service at an existing point of connection located outside the described sections and in Swepco's allocated territory. From that point the electricity would run over lines belonging to Beaver and into the area we have described as being allocated to Carroll. The energy so transferred would serve Beaver's water pumps and water treatment plant. It was the described contract and the service thereunder that generated the complaint filed by Carroll.

In support of its contention APSC is vested with exclusive authority in the matter before us, Swepco relies substantially on several statutes. The first citation is Ark. Stat. Ann. § 73-201 (d), (d) 1, and (d) 2 (Supp. 1973). It is contended that those statutes support the proposition that all

three parties to this litigation are public utilities. We are next referred to the powers and duties of the APSC as reflected in Ark. Stat. Ann. § 73-202 (a) (Repl. 1957). That statute makes it the duty of the APSC to "supervise and regulate every public utility in this Act defined, and to do all things, whether herein specifically designated, that may be necessary or expedient in the exericse of such power and jurisdiction, or in the discharge of its duty". It is next pointed out that complaints against utilities shall be made in writing to the APSC "setting forth any act or thing done or omitted to be done by any public utility . . . ." Ark. Stat. Ann. § 73-216 (Repl. 1957). It is contended that 73-216 and rules adopted by the APSC provide a full and complete procedural scheme for the filing, hearing, and determination of complaints. Statutorywise it is finally pointed out that the law makes it the duty of the APSC to bring suit against any person or corporation in violation of the Act, Ark. Stat. Ann. § 73-235 (Repl. 1957).

Petitioners, Swepco and Beaver, rely heavily on our case of *Southwestern Gas and Electric Co.* v. *City of Hatfield,* 219 Ark. 515, 243 S.W. 2d 378 (1951). The final determination to be made in that case was which of two competing electrical companies would in the future serve the electric distribution systems in the towns of Hatfield and Cove. The case was naturally before the APSC because it involved the sale of a utility, which action is required by statute to first gain the approval of APSC, Ark. Stat. Ann. § 73-253 (Repl. 1957). The primary question — in fact the only question — raised by Carroll in the instant suit is whether, under existing certificates from the APSC, it has the exclusive legal right to service Beaver. The legislative and administrative duties of APSC were exercised when the certificates were awarded. Carroll is saying: "We hold an exclusive franchise from the APSC to service the area upon which Swepco has encroached. We want Swepco ejected."

Justice Millwee, in the *Hatfield* case, affords a thorough and scholarly treatment of the problem before us. We think the rule in *Hatfield* can be succinctly paraphrased. The APSC is a creature of the Legislature and its duties are primarily legislative and administrative; it is not a judicial body. However, when the final act in a given case before the Com-

mission is legislative, that body is empowered to determine legal questions *which are incidental and necessary to the final legislative act*. In the case before us the end result would determine, as argued by Swepco and Beaver, which electrical corporation would serve Beaver; however, that result would hinge on the court's interpretation of the franchises already in existence. Of course the judgment of the Commission, if unfavorable to Swepco, would not prohibit any interested party from seeking legislative action by APSC to reallocate the territory. In oral argument Swepco advanced the theory that a judgment unfavorable to it might be res judicata as to such relief, but we do not agree, Ark. Stat. Ann. § 73-230 (Repl. 1957).

Since we conclude that the legal principles enunciated in *Hatfield* control our conclusion here, we see no point in analyzing every citation of authority. Furthermore, we have carefully considered those cases and conclude that they are not particularly helpful.

In *Prentiss* v. *Atlantic Coastline Company*, 211 U.S. 210 (1908) is recited by Justice Holmes a clear distinction between legislative and judicial powers as it applies to public utilities administrative bodies. We approved the quotation in *Hatfield*:

> A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.

In the case at bar the APSC has already fulfilled its legislative and administrative duties by making a determination awarding the area which includes Beaver to Carroll. The latter now seeks to get that order enforced. That is a judicial function. In fact, the Legislature contemplated there would at times be need for court action to enforce APSC orders. The statute, Ark. Stat. Ann. § 73-235 (Repl. 1957) authorizes the APSC to take such court action. That authority is certainly not exclusive of the fundamental right of a certificate holder

to likewise resort to the court for the enforcement of its rights under an existing certificate.

Petition denied.