OZARKS ELECTRIC COOPERATIVE CORP. *v.* Vernon HARRELSON and Norma Mae Harrelson

89-266                                    782 S.W.2d 570

Supreme Court of Arkansas
Opinion delivered January 16, 1990

*Burke & Eldridge, P.A.*, by: *John R. Eldridge III*, for appellant.

*Arthur H. Stuenkel*, Arkansas Public Service Commission, for amicus curiae Ark. Pub. Serv. Comm'n.

No brief filed for appellee.

STEELE HAYS, Justice. Vernon and Norma Mae Harrelson, appellees, reside in Washington County and have received electrical service from Ozarks Electric Cooperative Corporation,

appellant, since 1973. In February, 1988 Ozarks's computer indicated significant change in the Harrelsons' electrical usage and in May the appellant tested their meter and discovered it was defective. The appellant reviewed the Harrelsons' usage pattern and determined that no kilowatt hours had been registering on the meter since July, 1987. During the eleven month period the Harrelsons received minimum electricity bills and admitted noticing a marked decrease from previous bills. (Minimum bills amounted to $7.87 per month, while prior bills ranged from $70-$80.) The appellant reconstructed the charges for this eleven month period in accordance with the Arkansas Public Service Commission's General Service Rule 10 C (3)(a), estimating electrical usage costing $790.29.[1]

The Harrelsons refused to pay the revised bill and after giving notice, the appellant discontinued electrical service. The Harrelsons filed an action in Circuit Court, seeking a temporary restraining order and service was reconnected. The case was transferred to chancery and the chancellor held that the chancery court maintained jurisdiction of the dispute based upon equitable principles and that the Harrelsons owed for estimated usage only after February, 1988, less any amounts previously paid. On appeal, Ozarks asserts that the chancellor erred in denying its motion to dismiss for lack of subject matter jurisdiction. We sustain the argument.

The decisional process in this case necessarily begins with *Ozarks Electrical Cooperative Corporation* v. *Turner*, 277 Ark. 209, 640 S.W.2d 438 (1982), where similar issues were presented. Ozarks had discovered that the electric meter of its consumer, Turner, showed evidence of tampering and was not recording correctly. Ozarks gave the information to the prosecuting attorney and Turner was charged with theft of electrical services. Ozarks also demanded payment of $1,500, the amount it estimated to be due. Turner paid under protest and, when acquitted of the criminal charges, sued Ozarks for malicious

---

[1] This rule requires the billing correction to be based upon the customer's metered consumption for the previous six months if the date the meter first malfunctioned cannot be definitely ascertained. The rates effective during this period are then applied to the adjusted consumption and the difference between the amount so obtained and the actual billing are refunded or charged to the customer.

prosecution and for the return of the $1,500. The circuit judge directed a verdict on the claim of malicious prosecution, but submitted the $1,500 claim to the jury, which awarded a verdict to Turner of $1,250. Ozarks appealed, contending that subject matter jurisdiction of the dispute belonged, not to circuit court, but to the Public Service Commission pursuant to Ark. Code Ann. § 23-3-119(a)(2) (1987). In resolving the jurisdictional argument, we examined the holding of *Southwestern Electric Power Company* v. *Coxsey*, 257 Ark. 534, 518 S.W.2d 485 (1975), which recognized the distinction between the legislative function, which can be properly carried out by an administrative agency, and the judicial function, which cannot. The *Coxsey* opinion quoted remarks of Justice Holmes:

> A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power. [*Prentis* v. *Atlantic Coastline*, 211 U.S. 210 (1908).]

Rejecting the argument that jurisdiction of the dispute between Ozarks and Turner belonged to the Public Service Commission, we said:

> Were the APSC to hear this case, it would not be looking to the future and making a new rule or standard affecting the public or a group generally. Rather, it would be determining issues of fact from past actions involving *a particular individual* within existing law and deciding the liabilities involved. [Emphasis supplied.]

With relative promptness after *Turner*, the Arkansas General Assembly passed Act 758 of 1985 [codified as Ark. Code Ann. § 23-3-119 (1987)]. Several provisions of the act, including the emergency clause, make it clear that Act 758 was intended to reflect the legislature's disapproval of the holding in the *Turner* case and to place primary jurisdiction over such disputes in the Public Service Commission. Section 1 reads in part:

> It is the specific intent of [this enactment] to vest in the

Arkansas Public Service Commission the authority to *adjudicate individual disputes between consumers and the public utilities which serve them,* when those disputes involve public rights which the Commission is charged by law to administer. Public rights which the Commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly, and the lawful rules, regulations, and orders entered by the Commission in the execution of the statutes. [Our emphasis.]

The act contains other language as well which could only have been directed to our holding in *Turner.* Section 2(d) provides that the Commission shall have the authority:

. . . to conduct investigations and public hearings and to mandate monetary refunds, billing credits, or order appropriate prospective relief as authorized or required by law, rule, regulation or order. The jurisdiction of the Commission in such disputes is primary, and shall be exhausted before a court of law or equity may assume jurisdiction.

Section 1 also provides that the quasi-judicial jurisdiction of the Commission "to adjudicate public rights and claims in individual cases *is in addition to* the Commission's traditional legislative authority to act generally, and prospectively, in the interest of the public." [Our emphasis.] Powers of the Commission enumerated in the code include:

Ascertain and fix adequate and reasonable standards for the measurement of quantity, quality, pressure, initial voltage, or other conditions pertaining to the supply of all products, commodities, or services furnished or rendered by any and all public utilities; prescribe reasonable regulations for the examination and testing of such production, commodity, or service, and for the measurement thereof, establish or approve reasonable rules, regulations, specification, and standards to secure the accuracy of all meters or appliances for measurement; and provide for the examination and testing of any and all appliances used for the measurement of any product, commodity, or service of any public utility. [Ark. Code Ann. § 23-2-304(3) (1987).]

We conclude that the rights at issue in this case,

involving a specific regulation of the Commission, and affecting the delivery, measurement and cost of electrical power supplied to a consumer, fall within the primary jurisdiction of the Public Service Commission. Accordingly, we reverse and dismiss the suit.

TURNER, J., not participating.

