**Bill CULLUM, Darnell Cullum, Scott Kallsnick, and Cynthia Kallsnick, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**ARKLA, INC., Arkla Exploration Company, Arkoma Production Company, Jerrell Jones, Michael V. McCoy, Billy Harrell, Sheffield Nelson, Mac McLarty, Arkansas Public Service Commission, Sam I. Bratton, Jr., Patricia S. Qualls, Julius D. Kearney, and Jerrell Clark, Defendants.**

Civ. No. B–C–90–44.

United States District Court, E.D. Arkansas, N.D.

Aug. 7, 1992.

Jerry C. Post, Murphy, Post, Thompson, Arnold & Skinner, Batesville, Ark., Harvey L. Bell, Stephen P. Bilheimer, Bell, Bilheimer & Associates, P.A., Little Rock, Ark., J. Michael Rediker, Thomas L. Krebs, Ritchie & Rediker, Birmingham, Ala., Kenneth F. McCallion, James W. Johnson, Goodkind, Labaton & Rudoff, New York City, John M. Belew, Batesville, Ark., for plaintiffs.

N.M. Norton, Jr., Wright, Lindsey & Jennings, Little Rock, Ark., Joseph L. McEntee, Jones, Day, Reavis & Pogue, Chicago, Ill., Stephen C. Engstrom, Wilson, Engstrom, Corum & Dudley, Samuel A. Perroni, Perroni, Rauls & Looney, P.A., Marcia Barnes, Deborah Ruth Stallings, Jack, Lyon & Jones, P.A., Little Rock, Ark., Richard W. Cass, Gary .D. Wilson, Arthur F. Matthews, Roger W. Yoerges, Andrew B. Weissman, James Lee Buck, II, Wilmer, Cutler & Pickering, Washington, D.C., Theodore C. Skokos, Skokos, Coleman & Rainwater, P.A., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

This action presents, in essence, the question whether a private lawsuit under the federal Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1964(c) (1984), and other federal statutory provisions identified hereinafter, may be instituted against Arkla, Inc., Arkla Exploration Company, Arkoma Production Company, Jerrell Jones, Michael V. McCoy, Billy Harrell, Sheffield Nelson, Mac McLarty, Arkansas Public Service Commission (PSC), Commissioner Sam I. Bratton, Jr., Commissioner Patricia S. Qualls, Commissioner Julius D. Kearney, and PSC Executive Director Jerrell Clark (hereinafter with the PSC and Commissioners as the "Public Servant Group") to recover alleged excessive charges for natural gas imposed on the consuming public as a result of fraudulent conduct and material misrepresentations during rate setting proceedings.

Plaintiffs originally filed suit on June 5, 1990, and filed their first amended complaint on June 15, 1990, prior to the filing of any responsive pleadings. The defendants filed motions to dismiss to which plaintiffs filed a consolidated response on August 31, 1990. By order filed on September 28, 1990, the Court granted plaintiffs' September 6, 1990 motion to amend and supplement their complaint.

The second amended complaint was filed on October 9, 1990. Motions to dismiss, responses, replies and supplements were filed with the last filing on May 23, 1991. By order filed on July 3, 1991, all pending motions were referred to Magistrate Judge H. David Young for recommended disposition. On October 8, 1991, Magistrate Judge Young recommended that the case be dismissed. Plaintiffs filed objections on October 21st supported by the affidavit of Bernard Persky. By order filed on October 29th, the Court set oral argument on the recommended disposition and objections for November 15th. Thereafter, defendants filed their responses to the objections. By order filed on November 12th, the Court

cancelled oral argument and found that plaintiffs' alternative request to file an amended complaint should be granted to permit plaintiffs to address the alleged deficiencies and to incorporate the matters raised by the affidavit.

The third amended complaint was filed on December 2nd. Defendants filed motions to dismiss on January 27th and plaintiffs responded on March 16th. Replies were filed by all defendants on April 6th. On May 28th and July 6th, Nelson moved for submission of additional authority. Nelson's motions are granted.

Although the third amended complaint does provide more details than the second amended complaint, for purposes of this order, the Court adopts the following factual summary from the October 8th findings:

The plaintiffs seeks to represent a class of about 400,000 residential and commercial customers of Arkla, alleging that a fraud was perpetrated by the defendants, damaging the plaintiffs in an amount of at least $100,000,000.00. This continuing scheme began to be implemented around 1982. Some of the defendants directly participated in the scheme, while others covered up the scheme and its effects. The scheme was not discovered by the plaintiffs until later 1989 or early 1990.

As described by the plaintiffs, certain defendants manipulated the price of natural gas reserves located in two fields. Arkla, pursuant to long-term contracts, could have drilled for, and obtained, gas from these fields at favorable prices. Instead, defendants Jerrell Jones and Mike McCoy, owners of Arkoma Production Company, obtained acreage in the two fields and arranged a deal with Arkla. This deal, approved by Arkla on December 31, 1982, resulted in raising the price of gas from these fields fivefold. Defendants Nelson and Harrell knew that the deal would result in the higher prices, according to the plaintiffs.

Pursuant to the terms of the agreement, Jones and McCoy paid $15,000,-000.00 to Arkla over a three-year period, and promised to spend at least $30,000,-000.00 to explore gas reserves in the two fields and to acquire other acreage. Arkla conveyed one-half of its interest in the fields to Jones and McCoy. Arkla was obligated to purchase gas from Jones and McCoy pursuant to a "take or pay" [Footnote 2—This clause obligated Arkla to purchase 75% of all gas produced by Arkoma Production Company at the maximum lawful price.] provision in the contract. Unlike some other gas purchase contracts entered into by Arkla, there was a "unilateral renegotiation" clause in the agreement. As a result, when gas prices fell due to deregulation, Arkla did not have the right to renegotiate the prices it was obligated to pay to Jones and McCoy. In 1985, Arkla paid more than $18,000,000.00 to Jones and McCoy pursuant to the "take or pay" provisions of the agreement. During 1985 and 1986, the prices paid to Jones and McCoy were higher than the prices paid by Arkla to other gas producers whose contracts contained "bilateral renegotiations" clauses. [Footnote 3—In a gas purchase contract containing a "bilateral renegotiation" clause, Arkla retained the right to renegotiate the price it paid. In a gas purchase contract containing a "unilateral renegotiation" clause, Arkla retained no right of renegotiation.]

Arkla, desiring to resolve the "take or pay" claims, entered into an agreement with Jones and McCoy in late 1986 whereby Arkla became the sole owner of the stock of Arkoma Production Company. In exchange for the Arkoma stock, Arkla agreed, among other things, to pay Jones and McCoy $14,000,000.00 in cash and $35,000,000.00 pursuant to the terms of a promissory note. In addition, Arkla Exploration Company agreed to purchase quantities of gas from Arkoma Production Company and delivered a promissory note for over $24,000,000.00 to Jones and McCoy. The price paid by Arkla Exploration Company for the gas purchase from Arkoma between March of 1987 and September of 1989 was above the best market rate of gas for those years.

The plaintiffs contend that Jones was given preferential treatment by Arkla and that other producers were pressured to use Jones and Arkoma Production Company as an intermediary with Arkla. For example, the plaintiffs allege that in 1983, Stephens Production Company of Fort Smith, Arkansas ("Stephens'), was pressured into contractual arrangements whereby Jones and Arkoma Production Company obtained from Stephens certain interests in the two gas producing fields.

The 1982 agreement between Arkla and Arkoma Production Company was the subject of a 1983 investigation by the Arkansas Public Service Commission ("PSC"). The plaintiffs allege that the PSC's final report, issued in 1984, failed to answer some basic questions about the transaction. The PSC report, as well as the 1986 stock purchase of Arkoma Production Company by Arkla and related agreements, were part of a cover up of the fraudulent acts of the defendants, according to the complaint. Various other facts are alleged in support of the claim of a cover-up, including the allegation that secret meetings were conducted by the PSC and Arkla officials and the allegation that Arkla sought to pay attorney Thomas Mars $2,000,000.00 to further cover up the deceitful acts of the defendants.

Like the second amended complaint, the first four claims of the third amended complaint are based upon alleged violations of 18 U.S.C. § 1962, which is part of RICO, and the fifth claim is based upon an alleged violation of 42 U.S.C. § 1983. The sixth claim, which was contained in the original and first amended complaint, but omitted in the second amended complaint, alleges a violation of 42 U.S.C. § 1985.[1] The seventh claim is for declaratory judgment while the remaining five claims are brought pursuant to state law.

Magistrate Judge Young, in a thorough analysis, found that the second amended complaint did not set forth facts which would establish the required pattern of racketeering activity and recommended that the RICO claims be dismissed for failure to state a claim upon which relief may be granted. He further found that plaintiffs had failed to describe a protectable property right or a violation of federal statutes which would have permitted a claim under § 1983. He next found that even if there were a proper claim based upon procedural due process, the *Burford* abstention doctrine would be applicable.[2] Finally, without a basis for federal jurisdiction, it was recommended that the pendent state claims be dismissed.

◼ Subsequent to the filing of the third amended complaint, the decision of *H.J., Inc. v. Northwestern Bell Telephone Co.*, 954 F.2d 485 (8th Cir.) (*H.J.*), cert. denied, —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992) was announced. The Court finds *H.J.*, which held that the filed rate doctrine barred a RICO class action lawsuit where the state regulatory agency itself was involved in the alleged fraudulent conduct, to be controlling here. "[T]he focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate decisions." *H.J.* at 489. The Court simply cannot distinguish the situation in *H.J.* from the circumstances presented here. For example, while plaintiffs' 1990 attempt to intervene in the investigation by the PSC was unsuccessful, they could have continued their challenge pursuant to Ark.Code Ann. § 23–2–423 for review by the Arkansas Court of Appeals.

---

1. Plaintiffs conceded in their August 31, 1990 and December 14, 1990 responses that the defendants' arguments regarding equal protection and § 1985 were well founded. However, the March 16th response to the current motions to dismiss does not even mention, much less address the merits, of the equal protection and § 1985 claims.

2. The pleadings before Magistrate Judge Young at the time he made his recommendation had been filed in the months prior to May of 1991 and could not, of course, discuss the conclusion of the proceedings before the PSC. On May 16, 1991, that body of specially-appointed Commissioners approved and confirmed a settlement that resulted in an award of $13,600,000.00 in rate refunds to Arkla customers which include plaintiffs.


Plaintiffs rely on *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2nd Cir.1990) (*LILCO*) and *Taffet v. Southern Co.*, 930 F.2d 847 (11th Cir.1991) (*Taffet I*). However, the Eighth Circuit, at page 492 of *H.J.*, specifically refused to follow *LILCO* and *Taffet I*. Furthermore, on April 10th the opinion in *Taffet I* was vacated on rehearing in banc by *Taffet v. Southern Co.*, 958 F.2d 1514 (11th Cir. 1992) (*Taffet II*). In *Taffet v. Southern Co.*, 967 F.2d 1483 (11th Cir.1992) (*Taffet III*), the district courts' dismissals of the RICO actions were affirmed. Utilizing the filed rate doctrine, the Eleventh Circuit concluded that the private plaintiffs did not have a legal right to have been charged a lower rate and so they had failed to state a claim upon which relief could be granted under RICO.

Finding that the RICO claims are barred by the filed rate doctrine, the Court does not need to resolve the alternative arguments of defendants concerning the RICO claims. Nonetheless, the Court does note the following passage from *H.J.* at 495:

Although we do not decide whether the clear statement doctrine or *Burford* abstention bars the H.J. class's RICO claims, we observe that the foundations for those doctrines support our holding that the filed rate doctrine bars the claim. It cannot be disputed that the regulation of public utilities is traditionally a state concern.

The Court now turns to the due process and equal protection claims under §§ 1983 and 1985. As mentioned above, plaintiffs had previously conceded that defendants' arguments regarding equal protection and § 1985 had merit and have not disputed defendants' renewed arguments on these points. In light of plaintiffs' acquiescence and the complete absence of any suspect or invidious class-based allegations to support those legal theories, the claims of equal protection and § 1985 are dismissed. Plaintiffs, nevertheless, contend that they have stated valid claims under § 1983 for deprivation of due process arising from the improper and biased hearing procedures utilized by PSC and its Commissioners and

substantive due process arising from the scheme to defraud.

■ The fifth claim for relief found at pages 93–95 of the third amended complaint contains the § 1983 allegations against the Public Servant Group and Arkla. Paragraph 221 asserts the following:

Acting under color of the authority conferred upon them by the laws of the State of Arkansas, defendant Public Servant Group has adopted and is presently pursuing a policy, practice, custom and usage of depriving and continuing to deprive, Plaintiffs of:

(a) their property rights by approving, setting, and enforcing the collection of fraudulently increased utility rates, which rates were increased through the unlawful and fraudulent actions of the RICO Defendants, the Arkansas PSC and the Public Servant Group; and

(b) their constitutional right to have governmental review processes conducted free of fraud and misrepresentation.

Paragraph 138(c) at page 53 of the third amended complaint asserts that during the 1983 PSC investigation "private, *ex parte* meetings between Arkla personnel and PSC Commissioners and staff were held, and evidence was presented to the PSC, outside the public eye and off the record, in violation of PSC procedure and due process."

Paragraph 133 at page 51 of the third amended complaint alleges the following:

In addition to its direct manipulation of the PSC, Arkla also attempted to unlawfully influence the second PSC investigation which was recommenced in late 1989, by offering an attorney, representing adverse interests, what amounted to a $2,000,000.00 bribe. Thomas Mars was an attorney for certain gas consumers who intervened in the second PSC investigation. He sought to direct the PSC's attention to the imprudent nature of certain of the transactions referred to herein. On or about March 2, 1990, Arkla ... approached and offered Mars the sum of $2,000,000.00 under certain terms and conditions, the substance of which would have required Mars' collusion in

controlling the outcome of the ongoing PSC investigation, including a proposed collusive state court proceeding intended to benefit the RICO Defendants by furthering the cover-up of their fraudulent scheme.

The allegations against Arkla are found in Paragraph 224 at page 94 which reads as follows:

Defendant Arkla, under color of law, combined with the Defendant Public Servant Group and the RICO Defendants, and caused Plaintiffs and Gas Consumers to be subjected to the deprivation of the rights, privileges, or immunities secured by the Constitution and laws. Plaintiffs continue to be subjected to rates improperly established by the PSC through the false and deceptive practices of Defendant Arkla.

Paragraph 230 at page 95 recites that "[o]n information and belief, the dollar value of the losses suffered by Plaintiffs is not less than $100 million, and such other damages as may be proven at the trial of this action." This damages prayer seeks the same amount as the compensatory damages sought in the other claims.

At page 120 of plaintiffs' March 16th response, the following excerpt is found:

Plaintiffs do not seek to establish the right to a hearing before the PSC, as the plaintiffs sought in the above-cited cases. Such hearings were conducted during the course of the scheme to defraud set forth in this case. Rather plaintiffs seek to protect their right to a hearing before an impartial tribunal, free of ex parte contacts and bias.

Magistrate Judge Young accurately reasoned that plaintiffs do not have a protectable property right in a particular rate set by the PSC, under the "least-cost gas purchasing" statute, Ark.Code Ann. § 23–15–103, or in the absence of an adequate "independent source" which creates and defines the parameters of their property right. Plaintiffs, however, insist they have a substantive due process claim as expressed at

page 115 of their March 16th response as follows:

In the present case, the Amended Complaint properly pleads a claim under § 1983, for plaintiffs unequivocally allege that they have been injured by governmental action that was "arbitrary, irrational, or tainted by improper motive." [citation omitted] Indeed, the Amended Complaint alleges that the Public Servant Group provided Arkla with increased utility rates on the basis of defendants' misrepresentations and omissions of material facts, and that the Public Servant Group thereafter, through *ex parte* contacts and other improper means, conspired with Arkla to conceal from plaintiffs and others these misrepresentations and omissions of material facts. The Amended Complaint further alleges that as a result of defendants' wrongful and intentional conduct, plaintiffs were injured and deprived of their property by being compelled, under color of state law, to pay fraudulently-increased utility rates.

Furthermore, they frame their procedural due process claim at page 118 of that same response as the violation of their property rights by the collection and enforcement of confiscatory, fraudulently-induced gas rate increases.

As Arkla and the Public Servant Group correctly argue, if plaintiffs do not have a protectable property interest in a certain utility rate so that a hearing is not required, then allegations of regulatory misconduct in the hearing process cannot thereby confer a property right on plaintiffs that is protected by the federal Constitution.[3] Without the necessary property right, plaintiffs have simply not identified an interest protected under the Constitution or the civil rights laws. The claim for declaratory judgment does not bestow jurisdiction by itself and so it, too, must fail with the dismissal of the other federal claims.

Although Magistrate Judge Young's examination of *Burford* abstention was based

---

**3.** Plaintiffs were, and still are, free to petition the appropriate monitoring body for an investi-

gation of these serious allegations of misconduct.

on the assumption that the state administrative proceedings before the PSC were ongoing, the result of his analysis is not changed by the conclusion of those proceedings. It is clear that no matter how they characterize their objectives, plaintiffs' goal would, in essence, end in judicial ratemaking. Thus, the quotation from *H.J.* at page 495 regarding *Burford* abstention and the filed rate doctrine is applicable even if plaintiffs had properly stated a § 1983 claim.

Finally, with the dismissal of the federal claims upon which subject matter jurisdiction is based, the Court, exercising its discretion after a review of the relevant factors, is persuaded that the pendent state claims should be dismissed without prejudice if plaintiffs still wish to pursue them in the appropriate state court forum.

Accordingly, Nelson's May 28th and July 6th motions for submission of additional authority is granted. Plaintiffs' federal claims under RICO, declaratory judgment, § 1983 and § 1985 are dismissed with prejudice. The remaining pendent state claims are dismissed without prejudice if plaintiffs still wish to pursue them in the appropriate state forum.

IT IS SO ORDERED.