Bill CULLUM and Darnell Cullum, on Behalf of Themselves
and All Others Similarly Situated
*v.* SEAGULL MID-SOUTH, INC.
F/K/A Arkla Exploration Company, and Arkla, Inc.

94-1448 907 S.W.2d 741

Supreme Court of Arkansas
Opinion delivered October 23, 1995

*Belew & Bell*, by: *John M. Belew* and *Bell & Associates*, by: *Harvey L. Bell*, for appellants.

*Jones, Day, Reavis & Pogue*, by: *Joseph L. McEntee, James A. White*, and *David J. Chorzempa; Blair & Stroud*, by: *H. David Blair*; and *Wright, Lindsey & Jennings*, by: *N. M. Norton, Jr.*, for appellees.

ROBERT L. BROWN, Justice. This is an appeal by class representatives, Bill Cullum and Darnell Cullum, on behalf of a class of Arkla, Inc. ratepayers. They appeal from an order dismissing their civil law causes of action for lack of subject matter jurisdiction. In doing so, they urge various errors but primarily contend that the circuit court had jurisdiction of the tort actions and of their petition for declaratory relief. We disagree

and hold that this litigation constituted an impermissible collateral attack on Arkla rates filed with and approved by the Arkansas Public Service Commission.

The events giving rise to this litigation began in 1982. In that year, appellant Arkla entered into a "Take or Pay Contract" with Jerral Jones and Mike McCoy, the principals of Arkoma Production Company. That contract conveyed drilling rights to Arkoma in certain fields owned by Arkla and provided that Arkla would either buy the natural gas produced at a designated contract price, or not buy the natural gas and pay Arkoma 75% of that contract price. Arkla was foreclosed from renegotiating the price in the contract. The market price of natural gas soon fell. The result was that Arkla was locked into buying natural gas at excessively high prices under the Arkoma contracts which, according to the complaint, threatened its fiscal integrity by 1986. In late 1986, an Arkla subsidiary, Arkla Exploration Company, purchased all the outstanding stock of Arkoma and paid Jones and McCoy $14 million. Arkla and Arkla Exploration Company also assumed the Arkoma debt of $35 million owed to Jones and McCoy. Arkla Energy Resources, a division of Arkla, further agreed to purchase natural gas from Jones and McCoy, and Arkla gave them a promissory note in excess of $24 million to secure payment for that natural gas.

The Arkla/Arkoma transaction has been the subject of two reviews by the Public Service Commission. In 1983, the PSC examined the contract, and on July 30, 1984, it issued a report, finding that the Arkla/Arkoma arrangement was a legitimate business transaction which would not adversely affect Arkla rates. In 1989-90, the Arkoma contract and Arkla buy-out were investigated by the PSC pursuant to a complaint by ratepayers that Arkla had defrauded the PSC with the Arkoma transactions and breached its fiduciary duty to its ratepayers by charging rates that were illegally high. The resulting proceedings involved participation by the State Attorney General, Arkla representatives, and the PSC staff. Various ratepayers represented by attorney Thomas Mars ("Mars ratepayers") intervened. The Cullums also tried to intervene on behalf of Arkla ratepayers and asserted that Arkla had defrauded the PSC, but the PSC found that the interest of the Cullum ratepayers was adequately represented. After

discovery and a hearing, the PSC ordered relief to Arkla ratepayers in excess of $13 million.

The Cullums did not appeal their denial of intervention by the PSC. Instead, they filed an action in federal district court in which they made claims under the U.S. Constitution and Racketeer Influenced and Corrupt Organizations Act (RICO) and raised additional state tort claims for fraud. The federal district court invoked the filed rate doctrine, dismissed the constitutional and RICO claims with prejudice, and dismissed the state tort claims without prejudice. The Eighth Circuit Court of Appeals affirmed. *Cullum* v. *Arkla, Inc.*, 797 F. Supp. 725 (E.D. Ark. 1992), *aff'd*, 994 F.2d 842 (8th Cir. 1993).

On August 6, 1993, the Cullums filed the present lawsuit in Independence County Circuit Court as a class action against Arkla, Arkoma, and Seagull Mid-South, Inc., formerly known as Arkla Exploration Company. They alleged fraud on the part of Arkla, Arkoma, and Arkla Exploration Company as well as a conspiracy to commit fraud. They asserted that Arkla failed to disclose that $180 million was being paid to the Arkoma principals as the true cost of the buy-out. In addition, they alleged that Arkla ratepayers were forced to pay inflated rates due to natural gas prices which were artificially doubled in order to generate capital to fund the Arkla buy-out of the Arkoma contract. Finally, they asserted that secret accounts and bookkeeping devices were employed to hide Arkla's fraudulent scheme and that 5.5 billion cubic feet of natural gas was given to Arkoma as part of the buy-out.

Arkla and the other defendants moved to dismiss the complaint on the theory that it amounted to a collateral attack on Arkla's rates. They urged dismissal for lack of subject matter jurisdiction and pursuant to the doctrine of *res judicata* because of previous PSC action. On July 5, 1994, the trial judge wrote the parties questioning whether the circuit court had jurisdiction over a common law action of fraud mounted against a public utility. The judge then asked for briefs on the appropriate measure of damages at issue in the litigation and stated that his analysis of whether this was a rate case or fraud action would turn on the question of the measure of damages. On August 10, 1994, the trial judge issued his letter opinion and found that the circuit

court lacked subject matter jurisdiction over the action and also that the action was barred by the doctrine of *res judicata*. The trial judge further found that the Cullums' complaint did not allege the necessary elements to sustain the tort claims against Arkla Exploration Company and Arkoma.[1] An order followed, dismissing the cause of action under Rules 12(b)(1) and 12(b)(6) of the Arkansas Rules of Civil Procedure.

The Cullums assert error by the trial judge in his jurisdictional ruling and implore this court to focus on common law civil redress in tort and not the rate-making authority of the PSC. We begin by underscoring that the PSC is a creature of the legislature, and its duties are legislative. *Clinton* v. *Clinton*, 305 Ark. 585, 810 S.W.2d 923 (1991); *Southwestern Bell Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 267 Ark. 550, 593 S.W.2d 434 (1980). It is not a judicial body. *Southwestern Elec. Power Co.* v. *Coxsey*, 257 Ark. 534, 518 S.W.2d 485 (1975). We have held that the judiciary must defer to the expertise of the PSC in rate matters. *City of Fort Smith* v. *Arkansas Pub. Serv. Comm'n*, 278 Ark. 521, 648 S.W.2d 40 (1983).

The General Assembly has vested the PSC with the sole and exclusive jurisdiction and authority to determine rates to be charged by public utilities. Ark. Code Ann. § 23-4-201(a)(1) (1987). It is further clear that this jurisdiction extends over rate matters and disputes involving public rights between consumers and public utilities but not to private rights found in tort. Ark. Code Ann. § 23-3-119(a), (d), (f)(1) and (2) (1987); *see Ozarks Elec. Coop. Corp.* v. *Harrelson*, 301 Ark. 123, 782 S.W.2d 570 (1990). Hence, to the extent that this matter involves a dispute over rates charged by Arkla, its resolution falls within the purview and jurisdiction of the PSC.

The Cullums contend that their cause of action concerns a private right of action in tort against the appellees. They point to several cases from this court to support their position. *Ozarks Elec. Coop. Corp.* v. *Turner*, 277 Ark. 209, 640 S.W.2d 438 (1982); *Southwestern Elec. Power Co.* v. *Coxsey, supra; City of El Dorado* v. *Arkansas Pub. Serv. Comm'n*, 235 Ark. 812, 362 S.W.2d 680 (1962); *Associated Mechanical Contractors of*

---

[1]The Cullums do not make this finding a point of their appeal.

*Arkansas* v. *Arkansas Louisiana Gas Co.*, 225 Ark. 424, 283 S.W.2d 123 (1955); *Southwestern Gas & Elec. Co.* v. *City of Hatfield*, 219 Ark. 515, 243 S.W.2d 378 (1951). Upon review, we are convinced that these cases are easily distinguishable and do not resolve the issue at hand in favor of the Cullums.

■ The Cullums are correct that the cost of developing and producing oil and gas must be borne by the shareholders of a public utility and not by the ratepayers. Act 175 of 1957, now codified at Ark. Code Ann. § 23-15-104 (1987); *City of El Dorado* v. *Arkansas Pub. Serv. Comm'n*, supra. Indeed, none of the expenses associated with a private business owned by a public utility can be passed on to the ratepayers. *City of El Dorado* v. *Arkansas Pub. Serv. Comm'n*, *supra; Associated Mechanical Contractors of Arkansas* v. *Arkansas Louisiana Gas Co.*, *supra*. The Cullums maintain that the *City of El Dorado* case as well as other cases cited stand for the principle that any costs associated with natural gas exploration are outside of the ratemaking process and, thus, beyond the exclusive authority of the PSC. They further contend that the General Assembly and this court have separated the PSC's legislative function of ratemaking from the judicial functions of the courts. *See Southwestern Elec. Power Co.* v. *Coxsey, supra; Southwestern Gas & Elec. Co.* v. *City of Hatfield, supra.* Finally, they point to the case of *Ozarks Elec. Coop. Corp.* v. *Turner, supra*, as precedent for the circuit court's jurisdiction over a case involving excessive charges assessed by a utility against a ratepayer.

The *Ozarks Elec. Coop. Corp.* v. *Turner* case is factually different from the case at hand. There, the issue concerned a claim by Ozarks Electric that Turner had tampered with its electric meter and owed the utility $1,500. Turner paid the amount but sued the utility to recover it. The jury awarded Turner $1,250, and Ozarks Electric appealed on the basis that this dispute was solely within the jurisdiction of the PSC. In our decision, we made it clear that this was not a case which questioned the rate paid by Turner. The dispute, rather, was over the assertion that Turner had tampered with the meter, and the issue to be resolved was why, if this was not the case, Turner's individual meter reading was so low. The cause of action was not brought on behalf of a class or group of utility customers. We held that this was a matter appropriately resolved in circuit court.

The case of *Southwestern Elec. Power Co.* v. *Coxsey, supra,* is also not on point. In *Coxsey,* the issue was whether the PSC had exclusive jurisdiction over a declaratory judgment petition filed by one utility (Carroll Electric) against another utility (Swepco) to determine whether Swepco was servicing an area that fell within the certificate of convenience and necessity which the PSC had issued to Carroll Electric. We noted that the judicial decision hinged on the interpretation of the service area in the franchises issued and established by the PSC. Because Carroll Electric, as the certificate holder, simply sought to have the PSC's order enforced in court, we held that it had a judicial remedy.

The question before us is whether the tort action brought by the Cullums impermissibly encroaches on the exclusive authority of the PSC to fix rates. We believe that it does. We further agree with the trial judge that the filed rate doctrine resolves the jurisdictional question. The Eighth Circuit Court of Appeals defined the doctrine and explained the purpose behind it in 1992:

> The filed rate doctrine "forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority." The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.

> The purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require. The Supreme Court recently explained: "The duty to file rates with the Commission . . . and the obligation to charge only those rates . . . have always been considered essential to preventing price discrimination and stabilizing rates."

*H.J. Inc.* v. *Northwestern Bell Telephone Co.,* 954 F.2d 485, 488 (8th Cir.), *cert. denied,* 504 U.S. 957, 112 S. Ct. 2306, 119 L. Ed. 2d 228 (1992) (citations omitted). *See also Wegoland, Ltd.* v. *Nynex Corp.,* 27 F.3d 17 (2d Cir. 1994); *Taffet* v. *Southern Co.,* 967 F.2d 1483 (11th Cir.), *cert. denied,* 506 U.S. 1021, 113 S.

Ct. 657, 121 L. Ed. 2d 583 (1992); *Cullum v. Arkla, Inc., supra.*
In *H.J. Inc.*, the H.J. class brought a RICO claim and alleged
that the regulatory agency was involved in the fraudulent conduct
and conspiracy with the public utility. Because of the alleged
involvement of the regulatory agency, the H.J. class argued that
the filed rate doctrine should not apply. The Eighth Circuit dis-
missed the argument and stated:

> We are convinced, however, that the underlying conduct
> does not control whether the filed rate doctrine applies.
> Rather, the focus for determining whether the filed rate
> doctrine applies is the impact the court's decision will have
> on agency procedures and rate determinations.

*H.J. Inc.*, 954 F.2d at 489. The Court concluded that the damages
claimed by the H.J. class could only be measured by comparing
the difference between the rate the utility commission originally
approved and the rate the commission should have approved
absent the conduct of which the H.J. class complains.

The reasoning and the holding of the Eighth Circuit in *H.J.
Inc.* apply with equal force to the case before us. The damages
sought by the Cullums could only be gauged by assessing the
difference between the rates charged by the PSC and the rates the
PSC should have charged absent the pernicious conduct which
the Cullums allege. That falls squarely within the proscription
of the filed rate doctrine.

 This court has not formally adopted the filed rate
doctrine, although the General Assembly has enacted a statute
which prevents a public utility from charging rates other than
those approved by the PSC. *See* Ark. Code Ann. § 23-4-107
(1987). The policy behind the doctrine, as expressed by the Eighth
Circuit in the *H.J. Inc.* decision, is persuasive in our judgment.
That policy looks to the stability, uniformity, and finality inher-
ent in limiting rate charges to what has been filed with the reg-
ulatory agency and what has been determined as the reasonable
rate by that agency. This is a legislative function delegated by the
General Assembly to the PSC. We adopt the filed rate doctrine
today and apply it to the case at hand. We hold that the circuit
court lacked jurisdiction over the civil causes of action in tort
which necessarily required an assessment of damages measured

by what was the filed rate with the PSC and what the rate should have been. To do otherwise would permit a direct attack on the authority of the PSC to fix rates.

Because the absence of subject matter jurisdiction in circuit court resolves the matter, we need not reach the Cullums' remaining points relating to declaratory relief and *res judicata*. We do observe, however, that the Cullums' second point alleges error by the trial judge in failing to rule on their request to declare the Arkla/Arkoma contracts illegal and void. We have held that it is incumbent upon the affected party to obtain a ruling on a request for relief and failure to do so constitutes waiver. *See Oglesby* v. *Baptist Medical Systems*, 319 Ark. 280, 891 S.W.2d 48 (1995); *Morgan* v. *Neuse*, 314 Ark. 4, 857 S.W.2d 826 (1993). The Cullums failed to do this on their claim for declaratory relief.

Affirmed.

JESSON, C.J., not participating.