2011 Ark. 234

**HEMPSTEAD COUNTY HUNTING CLUB, INC., Petitioner**

**v.**

**SOUTHWESTERN ELECTRIC POWER COMPANY et al., Respondents.**

**No. 10–1094.**

Supreme Court of Arkansas.

May 26, 2011.

---

See also 2010 Ark. 221, 384 S.W.3d 477.

Chisenhall, Nestrud & Julian, P.A., Little Rock, by: Charles R. Nestrud and Heather G. Moody; and Munsch, Hardt, Kopf & Harr, P.C., by: Frederick W. Addison, III, for petitioner.

Gill, Elrod, Ragon, Owen & Sherman, by: Kelly M. McQueen and Stephen K. Cuffman, Little Rock; and Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf, P.A., Rogers, by: David R. Matthews, for respondent.

Kutak Rock LLP, Little Rock, by: David L. Williams; and Brickfield, Burchette, Ritts & Stone, P.C., by: John H. Conway, for amicus curiae East Texas Electric Cooperative, Inc.

Lori L. Burrows, Arkansas Pub. Serv. Comm'n, for amicus curiae Arkansas Public Service Commission.

KAREN R. BAKER, Associate Justice.

This case involves three questions of law certified to this court by the United States District Court for the Western District of Arkansas in accordance with our Supreme Court Rule 6–8 (2010). *See Hempstead Cnty. Hunting Club, Inc. v. Southwestern Elec. Power Co.*, 2010 Ark. 438, 2010 WL 4524370 (per curiam). The certified questions arose from a complaint that petitioner Hempstead County Hunting Club, Inc. ("Hempstead") filed in federal district court on July 13, 2010, asserting certain federal law claims,[1] as well as contending that by continuing construction of its plant ("Turk Plant") in Hempstead County without a Certificate of Environmental Compatibility and Public Need ("CECPN") or a Certificate of Convenience and Necessity ("CCN"), respondent Southwestern Electric Power Company, Inc. ("SWEPCO") was violating Arkansas public-utility statutes. With respect to the state-law claims, Hempstead requested a declaratory judgment, stating that SWEPCO is required to obtain a CECPN or a CCN, and injunctive relief, enjoining SWEPCO from further construction on the Turk Plant until it obtains a CECPN or CCN. The district court certified the state-law questions on October 21, 2010, and this court accepted certification on November 11, 2010. The questions certified are as follows:

(1) If the state-law claims of the Hempstead County Hunting Club were not brought in the first instance before the Arkansas Public Service Commission ("PSC"), is court review of such claims precluded by Arkansas Code Annotated sections 23–1–108, 23–3–119, 23–3–206, 23–18–502(e), and 23–18–525 (Repl.2002), or by the common law of Arkansas concerning the exhaustion of administrative remedies?

(2) When a utility applies for, receives, and commences construction under a Certificate of Environmental Compatibility and Public Need ("CECPN"), has the utility voluntarily submitted to the jurisdiction of the PSC pursuant to Arkansas Code Annotated section 23–18–504(b) (Repl.2002) and thereby waived its right to claim exemption under section 23–18–504(a)(5)?

(3) Is a public utility seeking to build a major utility facility under the exemption set out in Arkansas Code Annotated section 23–18–504(a)(5) required to ob-

1. On October 27, 2010, the district court granted Hempstead's motion for preliminary injunction in part, halting construction on work authorized by a permit under the federal Clean Water Act, 33 U.S.C. § 1344.

tain a Certificate of Convenience and Necessity ("CCN") under Arkansas Code Annotated section 23–3–201(a)?

As to the first question, we conclude that under Arkansas law, Hempstead was required to bring its claims before the PSC in the first instance; therefore, court review of the claims is precluded until Hempstead exhausts its administrative remedies. As a result of this conclusion, we do not reach the second and third certified questions, as reformulated.

In compliance with our per curiam order, Hempstead filed a brief in which it alleged that, under Arkansas law, (1) Arkansas courts have jurisdiction to declare that SWEPCO is required to obtain a CECPN or CCN; (2) SWEPCO waived the nonrate exemption from the CECPN requirement through its actions; and (3) even if SWEPCO is not required to obtain a CECPN, a CCN is still required. SWEPCO filed a brief in response.

## I. *Background*

On May 13, 2010, this court handed down its decision in *Hempstead Cnty. Hunting Club, Inc. v. Ark. Pub. Serv. Comm'n*, 2010 Ark. 221, 384 S.W.3d 477. After granting the PSC's petition for review of the court of appeals' decision in *Hempstead Cnty. Hunting Club, Inc. v. Ark. Pub. Serv. Comm'n*, 2009 Ark. App. 511, 324 S.W.3d 697, we reversed and remanded the PSC's grant of a CECPN to SWEPCO for the construction, maintenance, and operation of the Turk Plant. The mandate issued June 24, 2010.

The day this court's mandate issued, SWEPCO filed a notice of exemption ("Notice") with the PSC stating that the construction and operation of the Turk Plant would proceed under the exemption from the CECPN requirement pursuant to Ark. Code Ann. § 23–18–504(a)(5). SWEPCO elected not to recover the costs of the facility through rates that are subject to regulation by the PSC and instead planned to use capacity in the Turk Plant to provide retail electric services to consumers in Texas and Louisiana, which is regulated by the Texas and Louisiana utility commissions, and wholesale services subject to federal jurisdiction. Hempstead was served with a copy of the Notice but filed no response with the PSC, nor did it file any other claim for relief concerning the construction or operation of the Turk Plant with the PSC. The PSC issued an order on August 5, 2010, directing the secretary of the PSC to close the docket on this matter, "there being no further action to be taken in this matter at this time."

## II. *Certified Questions*

Under the first question, Hempstead raises three points. First, it alleges that the Utility Facility and Economic Protection Act, Ark.Code Ann. §§ 23–18–501 to –530 (Repl.2002 & Supp.2009) ("Utility Act"), unambiguously grants courts the authority to enforce the Utility Act. Second, Hempstead states that Ark.Code Ann. §§ 23–3–201 to –206 (Repl.2002 & Supp. 2009) ("CCN Statute") grants courts concurrent authority to enforce the CCN statute. Finally, it asserts that prior decisions of this court support the authority of the district court to resolve Hempstead's state-law claims, which are not excluded by the common-law doctrine of exhaustion of remedies.

Hempstead states that the federal district court has jurisdiction pursuant to Ark.Code Ann. § 23–18–525 (Repl.2002) to enforce compliance with the Utility Act by requiring SWEPCO to obtain a CECPN permit. The statute provides as follows:

Except as expressly set forth in §§ 23–18–505, 23–18–506, and 23–18–524, no court of this state shall have jurisdiction to hear or determine any

issue, case, or controversy concerning any matter which was or could have been determined in a proceeding before the Arkansas Public Service Commission under this subchapter or to stop or delay the financing, construction, operation, or maintenance of a major utility facility except to enforce compliance with this subchapter or the provisions of a certificate issued under this subchapter.

Ark.Code Ann. § 23–18–525.

Hempstead asserts that the PSC's jurisdiction is exclusive "except to enforce compliance with this subchapter." Hempstead focuses on this phrase in arguing that the federal district court has jurisdiction to compel SWEPCO to comply with the CECPN requirements. Hempstead acknowledges that the legislature granted the authority to administer the Utility Act to the PSC. It attempts to distinguish the present state-law claims as ones over which the court must interpret and enforce the Utility Act, rather than ones upon which the PSC must administer the CECPN law.

■ This argument is unpersuasive. We have not previously had cause to interpret section 23–18–525. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language; when the language is plain and unambiguous, there is no need to resort to rules of statutory construction. *Kesai v. Almand,* 2011 Ark. 207, 382 S.W.3d 669. Section 23–18–525 plainly confers jurisdiction upon the PSC, and not the courts, to hear a controversy arising under the Utility Act. The exception relates to actions to enforce compliance with the Utility Act or a certificate issued under the Utility Act. Here, SWEPCO provided notice to the PSC that it claimed an exemption to the application

of the CECPN requirement. Hempstead asserts that SWEPCO had waived its right to claim exemption. The place for Hempstead to seek relief from this action was before the PSC.

■ Hempstead next alleges that the district court has concurrent authority to enforce the CCN Statute. It states that if the court determines that SWEPCO is not required to obtain a CECPN, the court may exercise its authority to "enforce the CCN statute" by requiring that SWEPCO obtain a CCN. Hempstead concedes that the CCN Statute does not contain the express grant of jurisdiction to the courts to enforce the CCN Statute, but instead states that where the legislature gave the PSC the authority in Ark.Code Ann. § 23–3–206(a) (Repl.2002) to act on a complaint alleging that a public utility is constructing or operating a facility in violation of the statute, the legislature did not intend to grant exclusive authority to the PSC. Hempstead relies on the following statutory language to illustrate the legislature's intent not to give the PSC exclusive jurisdiction under section 23–3–206: "Nothing in this act shall be construed to in any way restrict the jurisdiction of any court of equity." Ark.Code Ann. § 23–1–108(a) (Repl.2002).

We have held that a court of equity does not have concurrent jurisdiction with the PSC in public-utility litigation where there is a clear, adequate, and complete remedy by an application to the PSC. *See Okla. Gas & Elec. Co. v. Lankford,* 278 Ark. 595, 648 S.W.2d 65 (1983). Here, Hempstead had a clear, adequate, and complete remedy by filing a complaint under section 23–3–119. Providing the PSC the opportunity in the first instance to decide the issues presented in this case, which are within the primary jurisdiction of the PSC, does not restrict the jurisdiction of any court of

equity because Hempstead may seek judicial review of the decision of the PSC.

Finally, Hempstead alleges that our precedent supports its position that the district court's authority is not excluded by the common-law doctrine of exhaustion of remedies. SWEPCO asserts in response that the court must first determine whether the review of the CECPN and CCN claims is precluded because they were not first presented to the PSC. Hempstead relies on this court's decisions in *Southwestern Gas & Elec. Co. v. Hatfield,* 219 Ark. 515, 243 S.W.2d 378 (1951), and *Southwestern Elec. Co. v. Coxsey,* 257 Ark. 534, 518 S.W.2d 485 (1975), to support its argument. It asserts that in *Hatfield* the court held that the PSC "is empowered to determine legal questions which are incidental and necessary to the final legislative act." *Coxsey,* 257 Ark. at 537, 518 S.W.2d at 487.

Hempstead's reliance on *Hatfield* and *Coxsey* is misplaced. This court observed in *Coxsey* that the issue in *Hatfield* was before the PSC because it involved the sale of a utility, which required the PSC's approval. *Coxsey,* 257 Ark. at 536, 518 S.W.2d at 486. Hempstead states that in *Coxsey* the court was authorized to *enforce* the PSC's grant of a CCN defining the boundaries between two utility companies. The court in *Coxsey* examined the distinction between legislative functions, which can be carried out by the PSC, and judicial functions, which rest with the judiciary. *Id.* This court later relied on this distinction in stating that the PSC could not hear the case at issue there because "it would be determining issues of fact from past actions involving a particular individual within existing laws and deciding the liabilities involved." *Ozarks Elec. Coop. Corp. v. Turner,* 277 Ark. 209, 212, 640 S.W.2d 438, 440 (1982).

In reaction to *Turner,* the general assembly passed Act 758 of 1985, codified at Ark.Code Ann. § 23–3–119(f). Act 758 clearly expressed the legislature's disapproval of our holding in *Turner* and placed primary jurisdiction over disputes such as those raised in *Turner* in the PSC. *See Ozarks Elec. Coop. Corp. v. Harrelson,* 301 Ark. 123, 782 S.W.2d 570 (1990). In *Harrelson,* we recognized the legislature's intention to give the PSC the authority to adjudicate certain disputes involving consumers and public utilities, as well as primary jurisdiction "to conduct investigations and public hearings and to mandate monetary refunds, billing credits, or order appropriate prospective relief as authorized or required by law, rule, regulation or order." *Id.* at 126, 782 S.W.2d at 572, (quoting Ark.Code Ann. § 23–3–119). Section 23–3–119 clearly states that "any customer of a public utility [or] any person unlawfully treated by a public utility ... may complain to the [PSC] in writing." Ark.Code Ann. § 23–3–119(a)(1) (Repl. 2002). The statute provides that the PSC shall have the authority "to order appropriate prospective relief as authorized or required by law, rule, regulation, or order. The jurisdiction of the [PSC] in such disputes is primary and shall be exhausted before a court of law or equity may assume jurisdiction." Ark.Code Ann. § 23–3–119(d). After the 1985 amendments to the act, the statute also states:

(1) It is the specific intent of [this enactment] to vest in the [PSC] the authority to adjudicate individual disputes between consumers and the public utilities which serve them when those disputes involve public rights which the [PSC] is charged by law to administer.

(2) Public rights which the [PSC] may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules,

regulations, and orders entered by the [PSC] in the execution of the statutes. Ark.Code Ann. § 23–3–119(f). Section 23–3–119 also provides that the PSC shall have quasi-judicial jurisdiction, with authority "to adjudicate public rights and claims in individual cases [that] is in addition to the [PSC]'s traditional legislative authority to act generally, and prospectively, in the interest of the public." Ark.Code Ann. § 23–3–119(f)(3); *see also Harrelson,* 301 Ark. at 125–26, 782 S.W.2d at 571–72. The general assembly extended the PSC's quasi-judicial authority to adjudicate complaints arising from the public utility statutes, rules and regulations and orders of the PSC. Ark.Code Ann. § 23–3–119(f)(3). Prior to the legislature's amendment of the statute in 1985, the PSC was authorized to act pursuant to legislative authority only when the action was "generally and prospectively in the interest of the public." Ark.Code Ann. § 23–3–119(f)(3).

It is clear that section 23–3–119 does not, as Hempstead urges, pertain only to billing disputes in which customers seek billing credits. We have not, at least since the 1985 amendment to section 23–3–119, given this statute such a strict reading. *See Harrelson, supra.* SWEPCO is clearly a public utility, and issuing a CECPN or CCN is within the laws and regulations that the PSC has jurisdiction to administer. Thus, the question is whether the relief that Hempstead seeks is within the "prospective relief" authorized under subsection 119(d). While we have not ruled on what this phrase fully encompasses, prospective relief would clearly include injunctive relief, with which the PSC could have ordered SWEPCO to stop the construction of the Turk Plant until a CECPN or CCN was obtained under Ark.Code Ann. § 23–18–525 or Ark.Code Ann. § 23–3–119(d). Under section 23–3–119, Hempstead was required to first bring a complaint for declaratory and prospective re-

lief before the PSC, and to exhaust all of its administrative remedies before the PSC prior to seeking judicial relief.

■ The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Austin v. Centerpoint Energy Arkla,* 365 Ark. 138, 226 S.W.3d 814 (2006). While there are exceptions to the exhaustion requirement, such as when pursuing administrative relief would be futile or irreparable harm would result, none of the exceptions apply here. Hempstead has not shown that irreparable injury will result if it is forced to pursue its administrative remedies or that an administrative appeal would be futile.

■ Should Hempstead file a complaint with the PSC and disagree with the PSC's disposition of its claims, at that point, it may seek judicial review under Ark.Code Ann. §§ 23–2–421 to –425. Only when an applicant has exhausted its administrative remedies does the state court system come into play. *Ark. Dep't of Health & Human Servs. v. Smith,* 370 Ark. 490, 262 S.W.3d 167 (2007). This conclusion comports with our consistent holdings that administrative agencies are better equipped than courts—by specialization, insight through experience, and more flexible procedures—to determine and analyze underlying legal issues affecting their agencies. *Id.* Accordingly, Hempstead is not without remedies; it simply must exhaust those remedies before seeking judicial relief.

Having decided the first certified question, we now turn to the second and third certified questions. In light of our conclusion on the first question, the determination of the issues presented in the second and third questions are necessarily within the purview of the PSC. Under our

Supreme Court Rule 6–8(c)(1), this court has the authority to reformulate certified questions, which the federal district court acknowledged in this case. Because these two questions as posed do not take into account the ramifications of our answer to the first question and our precedent regarding the primary jurisdiction of administrative agencies, we must reformulate the second and third questions by adding, at the end to each of them, the following clause: "or is this a question that the PSC must determine in the first instance?" Having so reformulated the questions, and consistent with our response to the first question, our response to the second and third questions is that the PSC is the sole entity that may address these questions in the first instance. As such, this court's opinion on the second and third certified questions, as reformulated, would constitute an improper advisory opinion. *See Longview Prod. Co. v. Dubberly,* 352 Ark. 207, 99 S.W.3d 427 (2003) (per curiam); *see generally* Coby W. Logan, *Certifying Questions to the Arkansas Supreme Court: A Practical Means for Federal Courts in Clarifying Arkansas State Law,* 30 U. Ark. Little Rock L.Rev. 85 (2007).

Special Justices CHARLES L. SCHLUMBERGER, G. MICHAEL MILLAR, and DEBORAH A. KNOX join in this opinion.

GUNTER, DANIELSON, and HENRY, JJ., not participating.