## GENERAL TELEPHONE COMPANY
## OF THE SOUTHWEST *v.* Lynn LOWE

78-18                                569 S.W. 2d 71

### Opinion delivered June 26, 1978
### (In Banc)
[As modified on petition for rehearing September 5, 1978.]

*Spitzberg, Mitchell & Hays,* by: *John P. Gill, Jerry D. Jackson,* and *Kent Foster;* and *Wueste, Holt, Harper & Hightower,* by: *Ward W. Wueste* and *David Hightower,* San Angelo, Texas, for appellant.

*Autrey, Weisenberger, Lingo & Johnson,* by: *LeRoy Autrey* and *Donald W. Lingo,* for appellees.

*Stephen Cuffman,* Asst. Counsel, Ark. Public Service Comm'n, for Ark. Public Service Comm'n, Amicus Curiae.

*Joe E. Griffin,* City Atty., for City of Texarkana, Arkansas, Amicus Curiae.

GEORGE ROSE SMITH, Justice. For many years the telephone rates on both sides of the Arkansas-Texas line in Texarkana were the same. In May, 1977, the appellant, which serves a number of cities and towns in Arkansas and Texas, raised its rates in Texarkana, Arkansas, without raising its rates in Texarkana, Texas. The appellee brought this class suit to enjoin the enforcement of the rate increase in Texarkana, Arkansas. This appeal is from a decree permitting the company to collect its former rates on the Arkansas side, but enjoining the collection of the increase until a similar increase has been put into effect on the Texas side. For reversal the telephone company contends that it is entitled to collect the increase regardless of the rates across the state line.

The continuous equality of telephone rates throughout the cities of Texarkana was the result of there having been in the franchise granted by each city a provision similar to the following paragraph, which we quote from the most recent franchise granted by Texarkana, Arkansas:

> Notwithstanding any other section or provision hereof, it is specifically agreed that the Grantee shall never charge a higher rate for telephone services within the City of Texarkana, Arkansas, than is charged for the same or similar services in the City of Texarkana, Texas, and the Grantee waives all rights it may have or claims which are inconsistent with this section.

The appellant argues that the above provision was nullified by Act 164 of 1977, which took away the authority of cities and towns in Arkansas to regulate utility rates. Ark. Stat. Ann. §§ 73-202a and -202b (Supp. 1977).

The background of the 1977 statute is pertinent. Under Act 324 of 1935 cities and towns on the one hand and the Public Service Commission (then the Department of Public Utilities) on the other exercised concurrent jurisdiction in fixing utility rates in municipalities. Ark. Stat. Ann. § 73-208 (e). The same statute, in subsection (f), provided that neither the act nor the Department (Commission) nor any court should deprive a municipality of benefits accruing to it under any franchise to which it was a party. Under the 1935 statute it was this appellant's practice, at least as far back as 1950, not to put into effect on the Arkansas side any rate increase granted by the Public Service Commission or by the city until the increase had also been approved on the Texas side.

In February, 1976, the company applied to the Commission for a general rate increase to be effective in all the 49 cities and towns served by the company in Arkansas. The Commission conducted a hearing on the application in December, 1976. Before the Commission reached its decision the legislature adopted Act 164, *supra,* effective February 14, 1977, vesting exclusive rate-making jurisdiction in the Commission. Section 5 of Act 164 maintained the status quo generally by providing that existing utility rates should not be affected until changed by order of the Commission.

The appellant did not in any way bring Act 164 to the Commission's attention. In April, after the passage of the act in February, the Commission handed down its decision granting the company an increase in rates not exceeding $1,325,528 annually. The company was directed to submit schedules designed to put the increase into effect. The company promptly submitted such schedules, still with no mention of Act 164. The Commission approved the schedules, which divided the various cities and towns into seven classifications according to the number of telephones in use. Texarkana, Arkansas, was put in Class V, but the city was not singled out for special treatment.

The telephone company next applied to the Texas Public Utility Commission for a like increase in its rates in Texarkana, Texas. When that application was denied the company announced for the first time that the increased rates

were being put into effect in Texarkana, Arkansas. This suit followed.

The chancellor's written opinion first held the rate increase in Texarkana, Arkansas, to be invalid on the merits, on the ground that Act 164 did not repeal the proviso in § 73-208 (f), *supra,* which prohibited the Commission and the courts from depriving a municipality of franchise benefits. The chancellor then went on to say that, even if his decision on the merits was in error, the collection of the rate increase should nevertheless be stayed, because Act 164 was not retroactive, and its effect upon the proposed increase had not been raised or decided in the proceedings before the Commission.

The chancellor was mistaken in deciding the case on its merits. A court of equity does not have concurrent jurisdiction with the Public Service Commission in public utility litigation when there is a clear, adequate, and complete remedy by an application to the Commission. *Commercial Printing Co.* v. *Ark. Power & Light Co.,* 250 Ark. 461, 466 S.W. 2d 261 (1971); *McGehee* v. *Mid South Gas Co.,* 235 Ark. 50, 357 S.W. 2d 282 (1962). Here the telephone company had such a remedy. The Commission unquestionably has jurisdiction to fix telephone rates in Texarkana, Arkansas. In doing so it may pass upon questions of law that are germane and incidental to its legislative act or ratemaking. *Southwestern Gas & Elec. Co.* v. *City of Hatfield,* 219 Ark. 515, 243 S.W. 2d 378 (1951). Therefore the Public Service Commission is the proper tribunal to decide in the first instance the effect of Act 164 upon telephone rates in Texarkana, Arkansas.

Hence the chancellor was in error in assuming jurisdiction of the case on its merits. For the same reason there was no jurisdiction in the chancery court to enjoin the company from collecting its increased rates. Those rates had been approved by the Commission; so there was no requirement that the company post a bond before putting the new rates into effect. We express no opinion about the appellee's possible remedies before the Commission. Neither do we reach the issue presented by the cross appeal, having to do with the validity of intrastate long-distance rates; for that too is a matter for the Commission's decision in the first instance.

Reversed and dismissed.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. In my view Act 164 of 1977, vested sole and exclusive rate making authority in the public service commission. Since the vesting of such authority in the public service commission and the commission's order made subsequent to the enactment thereof would conflict with the franchise agreement between General Telephone Company and the City of Texarkana, then the trial court would have jurisdiction to determine that controversy.

For the reasons stated, I would reverse on direct appeal and affirm on the cross-appeal.