Winston BRYANT, Attorney General *v.* ARKANSAS PUBLIC
SERVICE COMMISSION

CA 94-1316                                   919 S.W.2d 522

Court of Appeals of Arkansas
En Banc
Opinion delivered April 24, 1996
[Petition for rehearing denied June 5, 1996.*]

*MAYFIELD, J., would grant.

*Winston Bryant*, Att'y Gen., by: *Shirley Guntharp*, Deputy Att'y Gen. and *Suzanne Antley*, Assistant Att'y Gen., for appellant.

*Paul J. Ward*, for appellee.

Southwestern Bell Telephone Co., by: *Garry S. Wann* and *Ivester, Skinner & Camp, P.A.*, by: *Edward Skinner*, for Southwestern Bell Telephone Co.

JOHN MAUZY PITTMAN, Judge. In this appeal, the Attorney General challenges orders of the Arkansas Public Service Commission (Commission) finding that the Attorney General's complaint failed to state a cause of action upon which relief could be granted and that the Commission lacked jurisdiction to hear the complaint. Because we find that the complaint failed to state a cause of action, we limit our discussion to the sufficiency of the complaint and do not reach the jurisdictional issue.

On August 8, 1994, the Consumer Utilities Rate Advocacy Division (CURAD) of the Attorney General's office filed a complaint "on behalf of and for" Arkansas utility ratepayers, alleging that Southwestern Bell Telephone Company (SWB) had been "unjustly enriched" by providing and charging customers for an optional service without authorization. The Attorney General asserted that he was charged with representing the interests of Arkansas utility ratepayers by Arkansas Code Annotated §§ 23-4-301 through 23-4-307 (1987), the statutes that created CURAD, and that he was authorized by Arkansas Code Annotated § 23-3-119 (1987), the statute that provides for the bringing of a complaint to the Commission by any entity or person unlawfully treated by a public utility, to bring the complaint on behalf of the affected Arkansas ratepayers. The Attorney General stated that SWB's trunk conditioning service had been unbundled from SWB's trunk rate [for PBX customers] in 1985 and that subsequently SWB's applicable tariff was revised to give the conditioning service a separate product code (LOS) and rate. The Attorney General then alleged:

> Despite the optional nature of conditioning service, SWB began charging certain customers the new separate rate for the service and failed to notify those customers of their right not to have the service. Moreover, the separate rate is not specifically stated on the face of the customers' bills; rather, it is included in an item that appears on the customers' bill simply as "monthly charge," which includes various charges.

The Attorney General concluded that "there may be numerous customers of SWB who are being wrongfully charged for LOS service and possibly for other optional services without authorization." The Attorney General sought discovery "to determine the extent of SWB's unauthorized and wrongful charging"; a public hearing on the issue of SWB's "unauthorized and wrongful charg-

ing"; a refund of all amounts wrongfully charged; and an order from the Commission for SWB to cease and desist from its unauthorized and wrongful charging for optional, unnecessary, or non-functional services.

SWB responded to the complaint with a motion to dismiss. In Order No. 2, the Commission found that the complaint could properly be dismissed for failure to state a cause of action and because it lacked jurisdiction to hear a class action. The Commission, however, held SWB's motion to dismiss in abeyance for thirty days in order to give the Attorney General the opportunity to amend his complaint to state a cause of action and to specify the individual SWB customers he represented.

In his amended complaint, the Attorney General again claimed that he was authorized to present a complaint on behalf of the affected ratepayers but failed to identify any specific SWB customers harmed by SWB's actions. The Attorney General alleged that: "In May, 1985, SWB began charging the trunk customers the new separate rate for the service, but failed to notify them of their right not to have the service, or of the advisability of consulting their vendors to determine whether the service was necessary." The amended complaint sought notice to Arkansas ratepayers who have PBX systems, a public hearing, refunds to customers charged without their authorization from May 1985, and cessation of the alleged unauthorized charging for LOS service. SWB filed a motion to dismiss the amended complaint, stating in part that the Attorney General had failed to set forth facts to support specifically alleged violations of law and specific individual customers who were aggrieved by the alleged violations.

On November 23, 1994, the Commission dismissed the amended complaint for failure to state a claim pursuant to Section 23-3-119 and Rule 10.02 of the Commission Rules of Practice and Procedure and as a class action complaint exceeding the scope of the Commission's jurisdiction. The Commission found that the Attorney General had not alleged or shown that SWB had violated any law that the Commission has jurisdiction to administer, or any order, rule, or regulation of the Commission. On appeal, the Attorney General argues that the Commission failed to pursue its statutory authority; that it erred in holding that the Attorney General was attempting to bring a class action; and that it erred in holding that the Attorney General's complaint failed to state a cause of

action.

Before we address the Attorney General's arguments, some discussion of the service in question is appropriate. The conditioning service was unbundled from, or separated from, SWB's trunk rate in the context of a 1985 SWB rate case. Although the record does not include a copy of the applicable tariff that resulted from that rate case, we have been able to glean information about the conditioning service from the record and discussion at oral argument. It is apparent that the service applies to the local loop portion of the trunk between SWB's central offices and the customers' premises. The service is designated a "special circuit" with guaranteed service parameters. Its purpose appears to be to control distortion and other inappropriate noise on the lines. Service customers receive priority handling through a special service center as to trouble reports, repair, and testing. The service is available to both residential and business customers but appears to be directed toward business customers that handle large volumes of calls, such as hospitals and hotels. The tariff provides that the service is "normally required when voice grade line is connected to customer provided switching systems." Apparently, the service is mandatory for systems using certain types of trunks.

We turn now to the sufficiency of the complaint filed by the Attorney General and the Commission's finding that the Attorney General failed to state a cause of action. We address this issue first because we find it dispositive of the rest of the appeal. The thrust of the Attorney General's amended complaint is that SWB is charging some of its customers for LOS service without having notified them that this coverage became optional in 1985. When the conditioning service was unbundled from SWB's trunk rate in the 1985 rate case, SWB was not specifically ordered by the Commission to advise its customers who had previously been receiving the service. The Attorney General does not contend that SWB failed to comply with statutory and Commission notice requirements attendant to the change in rates. Furthermore, there is no evidence that any party to the rate case asked the Commission to order individual notices or separate line item billing or that any party appealed from the rate case alleging that such action should have been taken.

In Order No. 2, the Commission noted that the Attorney General had neither identified any specific customers to whom its complaint referred nor stated any specific acts to support its com-

plaint. The Commission stated that Arkansas law requires fact pleading and concluded that the Attorney General's complaint failed to meet this requirement. The Commission, however, gave the Attorney General an opportunity to amend its complaint to name individual consumers who have specific complaints against SWB. The Attorney General failed to do this in his amended complaint. Instead, he generally alleged that "all customers who had voice grade conditioned trunks prior to the [1985 rate case] have been wrongfully charged for LOS service every month from and after May, 1985." In Order No. 4, which dismissed the Attorney General's amended complaint, the Commission held:

> The [Attorney General's] Amended Complaint states that the [Attorney General] is the Complainant but its Complaint is on behalf of utility ratepayers "who have been charged for LOS service without their authorization." Amended Complaint at 1. The [Attorney General] has failed to identify any entity or individual that fits within this classification in either the Complaint or Amended Complaint, nor has any individual or entity sought to join in the [Attorney General's] Complaint or Amended Complaint. The [Attorney General], the named Complainant in this Docket, does not allege that it has ever received or been charged for LOS service or that the [Attorney General] is a customer of [SWB].
>
> ....
>
> The [Attorney General] does not allege that [SWB] failed to comply with Commission Rules regarding publication of notice of proposed changes in rates in Docket No. 84-165-U, the Docket in which the rate was unbundled. The [Attorney General] does allege that [SWB] did not show LOS service as a line item on bills and that [SWB] did not inform each individual customer of the optional nature of LOS service after May, 1985. However, the [Attorney General] does not cite any requirement in law or Commission orders in Docket No. 84-165-U which required a special line item on bills for LOS service or personal notification of the change in LOS service. The [Attorney General] does not allege that any customer charged for LOS service has not been provided that service.

....

The Amended Complaint of the [Attorney General] does not claim that [SWB] has violated any laws, orders, or rules and regulations which the Commission has authority to administer. Taken as true and correct, the Amended Complaint merely reflects that [SWB] charged for and provided one or more unnamed customers an optional service, LOS. Providing utility service pursuant to a filed tariff does not constitute a cause of action for a complaint.

Ark. Code Ann. § 23-3-119(a)(1) and Rule 10.02 specify that a complaint must set forth clearly and fully the act or violation of any order, law or rule which is the subject of the complaint. In Order No. 2, the Commission advised the [Attorney General] that its Complaint failed to meet the requirements of the statute and rule and allowed the [Attorney General] time to amend the Complaint to cure the cited deficiencies. The [Attorney General's] Amended Complaint does not cure the cited deficiencies. In the Amended Complaint, the [Attorney General] failed to identify a complainant who is a customer of [SWB] and who allegedly has been unlawfully treated by [SWB], and the Amended Complaint fails to identify any violation or alleged violation of any law, order or rule arising from the public utility statutes. The Amended Complaint should be and hereby is dismissed.

■■ We agree with the Commission's conclusion that the Attorney General's amended complaint failed to state a cause of action. Rule 10.02(c) of the Commission's Rules of Practice and Procedure requires that:

Each formal complaint shall fully and clearly set out any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the Commission has jurisdiction to administer, or of any order or rule of the Commission and the exact relief which is desired. The complaint shall contain facts and information sufficient to fully apprise the Commission and the respondent of the facts and issues involved and to enable the respondent to prepare its answer to the complaint.

This rule is a reflection of the clear standard adopted in Arkansas, which requires fact pleading: "[a] pleading which sets forth a claim

for relief ... shall contain (1) a statement in ordinary and concise language of facts showing that ... the pleader is entitled to relief ...." Ark. R. Civ. P. 8(a)(1). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state facts upon which relief can be granted...." These two rules must be read together in testing the sufficiency of the complaint; facts, not mere conclusions, must be alleged. *Hollingsworth* v. *First Nat'l Bank and Trust Co.*, 311 Ark. 637, 846 S.W.2d 176 (1993); *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and pleadings are to be liberally construed. *Id.*

■ The Attorney General filed his complaint and amended complaint pursuant to Section 23-3-119, which provides in part:

(a)(1) Any chamber of commerce or board of trade, mercantile, agricultural, or manufacturing association, any public utility, any municipality, any customer of a public utility, any person unlawfully treated by a public utility, or any public utility unlawfully treated by a customer, may complain to the commission in writing. The complaint shall set forth any act or thing done or omitted to be done by any public utility or customer in violation, or claimed violation, of any order, law, or regulation, which the commission has jurisdiction to administer.

This court must construe a statute just as it reads by giving the words their ordinary and usually accepted meaning. *Arkansas Vinegar Co.* v. *Ashby*, 294 Ark. 412, 743 S.W.2d 798 (1988). Viewed in this light, it is clear that to bring a complaint pursuant to this statute, the *complainant* must have been unlawfully treated by a public utility. This complaint is brought by the Attorney General who has not alleged that either he or the state has been unlawfully treated. Even if this court were to accept the Attorney General's second argument — that he can represent the affected ratepayers collectively — this statute requires a named complainant who has been unlawfully treated by the utility.

■ In his amended complaint, the Attorney General continued to assert that he was representing those Arkansas ratepayers charged for the service without authorization. He sought to cure the deficiencies in his complaint by alleging that some unnamed

SWB customers had requested and received termination of the conditioning service with no resulting impairment to the quality of service received. In addition, he alleged that SWB had only made partial refunds to those customers of the amount paid for the conditioning service since 1985. These generalities and conclusions are not sufficient to cure the fatal flaw in the complaint. The facts constituting a cause of action must be pled in direct and positive allegations, not by way of argument, inference, or belief. *Big A Warehouse Distrib., Inc.* v. *Rye Auto Supply, Inc.*, 19 Ark. App. 286, 719 S.W.2d 716 (1986). Statements of generalities and conclusions of law are not sufficient to state a cause of action. *Id.*

In denying the Attorney General's petition for rehearing in Order No. 5, the Commission further explained:

> The [Attorney General] continues to repeat its contention that the Commission has jurisdiction to hear the [Attorney General's] Complaint and Amended Complaint because the Commission can order a remedy in the form of refunds. However, the [Attorney General] has yet to even allege that [SWB] has violated any tariff, rule, law or order which is jurisdictional to the Commission and which would form the jurisdictional and legal basis for the Commission to consider a remedy. The [Attorney General] apparently believes that it can bypass any legal deficiencies in its pleadings by leaping to the remedy without stating a cause of action. The Commission has the authority to order refunds as a remedy when a consumer has been charged unlawfully by a utility but first there must be a complaint and proof of an unlawful charge before a remedy is imposed....
>
> A further flaw in the [Attorney General's] argument is that if the Commission were to consider the [Attorney General's] Amended Complaint, to whom would refunds be made and in what amount? A refund is the return of an amount paid. The [Attorney General] does not allege that its Amended Complaint is applicable to all [SWB] customers, but there is no named complainant who alleges it has been unlawfully charged in this Docket. The [Attorney General] does not allege that it has received or been charged for LOS service, nor does the [Attorney General] even allege that it is a [SWB] customer. No complainant has ever been named who allegedly received or was charged for LOS service.

Without at least one such individual, no refund could be calculated or awarded by the Commission.

■ This court must examine the complaint in light of Section 23-3-119 and the well established rules previously set out. Simply put, the Attorney General has failed to identify a complainant who is a SWB customer and who allegedly has been unlawfully treated by SWB. Because the Attorney General has failed to conform with the minimal pleading requirements of Section 23-3-119 and Rule 10.02(c) of the Commission's Rules of Practice and Procedure, it is unnecessary for us to address the other points raised by the Attorney General. We affirm the Commission's dismissal of the complaint.

Affirmed.

JENNINGS, C.J., ROBBINS, and NEAL, JJ., agree.

ROGERS, J., concurs.

MAYFIELD, J., dissents.

JUDITH ROGERS, Judge, concurring. I agree that the Attorney General's claim must fail for the reasons given by the majority. I write only to express my concern about the Commission's apparent failure to prepare for the future. With the swift and inevitable move to a more competitive environment in the utility industry, utilities will be presenting more choices to their customers as "unbundling" continues. Based on the record in this case, there may be unique aspects to the unbundling process that warrant a change in the Commission's notice requirements. According to discussion at oral argument, the Commission has failed to initiate action in this regard but instead remains in a reactive mode. The Commission has at its disposal the power to investigate and promulgate rules if necessary. I would hope that the Commission would exercise that power.

MELVIN MAYFIELD, Judge, dissenting. I respectfully dissent. The majority has affirmed the Commission's dismissal of the Attorney General's complaint, finding that he failed to state a cause of action upon which relief could be granted. In doing so, the majority noted that the Attorney General had not identified any specific customers to whom his complaint referred nor had he stated any specific acts to support his complaint. I disagree with this conclusion.

The Attorney General states in his complaint that he represents all customers who had LOS service prior to the 1985 rate case and have been wrongfully charged for this service since that time without their authorization. He specifically alleges the following facts: that SWB's trunk conditioning service was unbundled from its trunk rate in 1985 and that SWB's tariff was revised to give the conditioning service a separate produce code (LOS); that SWB continued to charge certain customers for this service, despite the optional nature of the conditioning service, without notifying them of their right not to have this service; and that the separate rate for the LOS service is not stated on the face of the customer's bill but is included in the monthly charge along with various other items. The Attorney General concludes that there may be numerous customers of SWB who are being wrongfully charged for LOS service and seeks discovery in order to ascertain the extent of SWB's unauthorized and wrongful charging, a public hearing, and a Commission order for SWB to cease and desist from its unauthorized and wrongful charging for the optional service.

Rule 10.02(c) of the Commission's Rules of Practice and Procedure provides in part that the complaint shall contain facts and information sufficient to fully apprise the Commission and the respondent of the facts and issues involved and to enable the respondent to prepare its answer to the complaint. Arkansas Code Annotated § 23-3-119 (1987) allows a complaint to be brought to the Commission by any entity or person unlawfully treated by a public utility. This statute specifically includes "[a]ny chamber of commerce or board of trade, mercantile, agricultural, or manufacturing association, any public utility, any municipality, any customer of a public utility, any person unlawfully treated by a public utility, or any public utility unlawfully treated by a customer...." Moreover, Ark. Code Ann. § 23-2-304(a)(2) and (3) (Supp. 1993) provides that the Commission, upon complaint, shall determine the reasonable, safe, adequate, and sufficient service to be observed, furnished, enforced, or employed by any public utility and to fix this service by its order, rule, or regulation; and to ascertain and fix adequate and reasonable standards, classifications, regulations, practices, and services to be furnished, imposed, observed, and followed by any or all public utilities. In my opinion, the Attorney General's complaint satisfies the requirements for relief under these statutes and rule.

Furthermore, the CURAD statutes, Ark. Code Ann. §§ 23-

4-301 — 23-4-307 (1987), charge the Attorney General with the responsibility of representing the interests of Arkansas utility rate-payers. Section 23-4-305 provides:

> The Consumer Utilities Rate Advocacy Division shall represent the state, its subdivisions, and all classes of Arkansas utility rate payers and shall have the following functions, powers, and duties:
>
> > (1) To provide effective and aggressive representation for the people of Arkansas in hearings before the Arkansas Public Service Commission and other state and federal courts or agencies concerning utility-related matters.
> >
> > (2) To disseminate information to all classes of rate payers concerning pertinent energy-related concepts.
> >
> > (3) To advocate the holding of utility rates to the lowest possible level.

In bringing his complaint, the Attorney General sought to protect the interests of specific Arkansas ratepayers who had been charged LOS service without their authorization or knowledge. These ratepayers are customers of SWB and therefore are entitled to bring a complaint to the Commission under Section 23-3-119.

It has repeatedly been held that, in testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint and pleadings are to be liberally construed. *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). The complaint of the Attorney General sufficiently identifies the ratepayers that he is representing and pleads sufficient facts to fully apprise the Commission and SWB of the issues involved and the relief sought. I would reverse the dismissal of the Attorney General's complaint.