## Robert BRANDON and Carl Brooks *v.*
## ARKANSAS PUBLIC SERVICE COMMISSION

CA 97-1177                                           992 S.W.2d 834

### Court of Appeals of Arkansas
### Divisions I and II
### Opinion delivered June 23, 1999

[Petition for rehearing denied October 6, 1999.*]

* GRIFFEN, J., would grant.

142

*The Evans Law Firm*, by: *Marshall Dale Evans*, for appellants.

*Larry E. Crane*, for appellee Arkansas Public Service Commission.

*Everett & Mars*, by: *Thomas A. Mars*, for appellee Arkansas Western Gas Company.

JUDITH ROGERS, Judge. Appellants challenge Order No. 4 entered by the Arkansas Public Service Commission in which the Commission denied their request to act on behalf of other unnamed ratepayers and held that it lacked authority to award their counsel attorneys' fees under the common-fund doctrine. Appellants petitioned for rehearing on these issues, but the Commission denied their petition in Order No. 5.

On December 3, 1993, appellants, Robert Brandon and Carl Brooks, on behalf of themselves and "all ratepayers similarly situated," filed a complaint with the Arkansas Public Service Commission, requesting that it order Arkansas Western Gas Company (AWG) to refund to its Arkansas ratepayers the rates it collected in violation of the "least-cost gas purchasing statute," Arkansas Code Annotated section 23-15-103 (1987). Appellants alleged that, in an order entered in another docket, the Commission had held that the gas price charged by AWG to its customers violated section 23-15-103's requirement to purchase gas from the "lowest or most advantageous market" but that no request for a refund had been made to the Commission. Appellants, who alleged that they had been customers of AWG during the period in question, requested that the Commission make findings of facts and conclusions of law regarding AWG's alleged violations, order AWG to make a monetary refund, award appellants the costs of their action pursuant to

Arkansas Code Annotated section 23-2-428(b) (1987), and award them their attorneys' fees under the "common fund" doctrine. In response, AWG denied that appellants were entitled to the relief they requested. AWG filed two motions with the Commission. One motion asked the Commission to determine its jurisdiction to award appellants' counsel attorneys' fees under the common-fund doctrine. The other asked the Commission to determine appellants' authority to act on behalf of other ratepayers.

In Order No. 4, the Commission denied appellants permission to act on behalf of other unnamed ratepayers. In doing so, the Commission discussed its authority under Ark. Code Ann. § 23-3-119 (1987), noting that, as a creature of the legislature, it must act within the power conferred upon it by legislative act and that it had held on two prior occasions that it lacked jurisdiction to entertain a class action. The Commission concluded that, although section 23-3-119 gives it authority to adjudicate individual disputes between consumers and the public utilities which serve them, the statute does not give it authority to adjudicate class actions.

We first address appellants' contention that the Commission erred in finding that it lacked authority to hear class actions. In making this determination, the Commission focused on the phrase "individual disputes" used in section 23-3-119(f)(1) and cited its decisions in *Bryant v. Southwestern Bell Telephone Co.*, Docket No. 94-283-C, Order No. 2, and *Latin v. Southwestern Bell Telephone Co.*, 126 PUR 4th 302 (Ark. P.S.C. 1991). Appellants contend, however, that the Commission has always had jurisdiction over complaints between ratepayers and regulated utilities, which includes the authority to decide disputes of a class nature, and that the passage of section 23-3-119 expanded the Commission's jurisdiction to include individual disputes between consumers and utilities and did not limit its existing authority.

The first rule in considering the meaning of a statute is to construe it just as it reads, giving words their ordinary and usually accepted meaning in common language. *McCoy v. Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994). Section 23-3-119 is part of

Act 758 of 1985 that was passed by the legislature to expand the jurisdiction of the Commission. Section 23-3-119(f) provides:

(f)(1) It is the specific intent of the General Assembly in enacting the 1985 amendment to this section to vest in the Arkansas Public Service Commission the authority to adjudicate individual disputes between consumers and the public utilities which serve them when those disputes involve public rights which the commission is charged by law to administer.

(2) Public rights which the commission may adjudicate are those arising from the public utility statutes enacted by the General Assembly and the lawful rules, regulations, and orders entered by the commission in the execution of the statutes. The commission's jurisdiction to adjudicate public rights does not and cannot, however, extend to disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

(3) The commission's quasi-judicial jurisdiction to adjudicate public rights and claims in individual cases is in addition to the commission's traditional legislative authority to act generally and prospectively in the interest of the public. The quasi-judicial commission authority recognized in this section is a legitimate function and does not, in the judgment of the General Assembly, constitute an unlawful delegation of judicial authority under either the Arkansas Constitution or the United States Constitution.

■ ■ In its decision in *Latin v. Southwestern Bell Telephone Company, supra,* the Commission acknowledged that the language of section 23-3-119 was unclear and that various words or phrases used in section 23-3-119 support a legislative intent either to authorize or to preclude class actions before the Commission. When a statute is ambiguous, the court must give effect to the legislative intent. *ACW, Inc. v. Weiss,* 329 Ark. 302, 947 S.W.2d 770 (1997). To determine the intent of the legislature, the court must look to the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. *Omega Tube & Conduit Corp. v. Maples,* 312 Ark. 489, 850 S.W.2d 317 (1993). The language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and

other appropriate means that throw light on the subject are used by the court in an attempt to construe legislative intent. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). While the title of an act is not part of the law, it may be referred to in order to help ascertain the intent of the General Assembly. *Routh Wrecker Serv., Inc. v. Wins*, 312 Ark. 123, 847 S.W.2d 707 (1993).

The title of Act 758, which is codified at section 23-3-119, describes the legislative purpose behind the Act:

> AN ACT to Amend Section 17 of Act 324 of 1935, as Amended, [Ark. Stats. 73-216] to Confer upon the Arkansas Public Service Commission Authority to Hear Complaints Brought by any Consumer(s), or Representative thereof, of an Arkansas Public Utility Against Said Utility; to Conduct Public Hearings and Make Determinations Regarding Alleged Violations of any Law or Regulation Administered Under the Jurisdiction of the Commission; to Mandate Refunds or Other Relief to an Injured Party as Deemed Appropriate by the Commission; and for Other Purposes.

The emergency clause further provides:

> It is hereby found and determined by the General Assembly that the authority of the Public Service Commission to enforce the laws which it is charged to administer has been interpreted on occasion not to include quasi-judicial authority to vindicate public rights. This interpretation has resulted in delay of justice in the courts, and may as a practical matter have denied justice to ratepayers and utilities. . . .

■ ■ Act 758 clearly demonstrates a legislative intent to place primary jurisdiction over consumer disputes in the Commission, *see Ozarks Electric Cooperative Corporation v. Harrelson*, 301 Ark. 123, 782 S.W.2d 570 (1990), and we disagree that the use of the word "individual" in section 23-3-119(f) was intended by the legislature to deny the Commission the authority to hear consumer disputes brought in a representative capacity. Although a statute should be construed so that no word is void, superfluous, or insignificant, and meaning and effect must be given to every word contain therein, if possible, *see Locke v. Cook*, 245 Ark. 787, 434 S.W.2d 598 (1968), we will not interpret a statute so strictly

as to reach an absurd conclusion that is contrary to legislative intent. *Jackson v. State*, 336 Ark. 530, 986 S.W.2d 405 (1999).

■ We conclude that section 23-3-119 does not prevent the Commission from hearing class actions. We now must ascertain whether the authority to hear class actions is included within the Commission's "traditional legislative authority to act generally and prospectively in the interest of the public." Ark. Code Ann. § 23-2-301 (1987). The issue of whether the Commission has been granted authority to hear class actions has never been directly addressed by the legislature or the Arkansas appellate courts; however, several supreme court decisions have held that the Commission is the proper forum for actions brought by a class.

In *General Telephone Co. of the Southwest v. Lowe*, 263 Ark. 727, 569 S.W.2d 71 (1978), the appellee brought a class suit in the Miller County Chancery Court to enjoin the enforcement of a rate increase in Texarkana, Arkansas. The chancellor enjoined the rate increase, but on appeal, the supreme court held that the chancellor erred in deciding the case on its merits. The supreme court held that the appellee had a complete remedy by application to the commission:

> A court of equity does not have concurrent jurisdiction with the Public Service Commission in public utility litigation when there is a clear, adequate, and complete remedy by an application to the Commission. *Commercial Printing Co. v. Ark. Power & Light Co.*, 250 Ark. 461, 466 S.W.2d 261 (1971); *McGehee v. Mid South Gas Co.*, 235 Ark. 50, 357 S.W.2d 282 (1962). Here the telephone company had such a remedy. The Commission unquestionably has jurisdiction to fix telephone rates in Texarkana, Arkansas. In doing so it may pass upon questions of law that are germane and incidental to its legislative act or ratemaking. *Southwestern Gas & Elec. Co. v. City of Hatfield*, 219 Ark. 515, 243 S.W.2d 378 (1951). Therefore, the Public Service Commission is the proper tribunal to decide in the first instance the effect of Act 164 upon telephone rates in Texarkana, Arkansas.

*General Tel. Co. v. Lowe*, 263 Ark. at 730, 569 S.W.2d at 73.

In *Oklahoma Gas and Electric Co. v. Lankford*, 278 Ark. 595, 648 S.W.2d 65 (1983), the appellant sought to prohibit the Sebastian County Circuit Court from exercising jurisdiction over a class

action suit for declaratory judgment filed by the appellees, customers and ratepayers of the appellant. The appellees had requested that the trial court declare unconstitutional a statute that allowed a utility to collect a requested rate increase under bond. The appellant argued that the appellees' petition should have been presented to the commission, because it had exclusive jurisdiction over matters pertaining to utility rates. The supreme court agreed and granted the appellant's requested writ of prohibition:

> [Appellees] had a full, adequate, and complete remedy by intervention in the proceedings before the PSC. At that time the PSC could have ruled on the constitutionality of Ark. Stat. Ann. § 73-217 and the other issues which [appellees] are now raising. The PSC, in exercising its exclusive jurisdiction over rate setting, can also pass upon questions of law that are germane and incidental to its legislative acts.

*Id.* at 597-98, 648 S.W.2d at 66 (citations omitted). The *Lankford* decision was further discussed by the supreme court in *Lincoln v. Arkansas Public Service Commission*, 313 Ark. 295, 854 S.W.2d 330 (1993):

> In *Lankford,* this court granted a writ prohibiting a circuit court from exercising jurisdiction over a class action ratepayers' suit. The class sought, among "other ancillary" matters, a declaration that part of the statute allowing a utility to collect a rate increase under bond was unconstitutional. This court granted the writ of prohibition because the class had a full, adequate, and complete remedy at the administrative level, but it failed to exhaust that administrative remedy before seeking judicial relief in the circuit court. The class could have intervened in the proceedings before the PSC wherein the utility requested the challenged rate increase and presented all of its claims there rather than in circuit court . . . .

*Lincoln v. Arkansas Pub. Serv. Comm'n*, 313 Ark. at 298, 854 S.W.2d at 331.

■ *Lowe* and *Lankford* were both handed down by the supreme court before the passage of Act 758. In construing a statute, this court will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject,

and full knowledge of judicial decisions under preexisting law. *See Robert D. Holloway, Inc. v. Pine Ridge Add'n Residential Property Owners,* 332 Ark. 450, 966 S.W.2d 241 (1998).

*Cullum v. Seagull Mid-South, Inc.,* 322 Ark. 190, 907 S.W.2d 741 (1995), was decided by the supreme court after the passage of Act 758. In that case, class representatives, Bill Cullum and Darnell Cullum, on behalf of a class of Arkla, Inc., ratepayers appealed from an order dismissing their civil-law causes of action for lack of subject matter jurisdiction. In their appeal, they asked the supreme court to focus on the common-law civil redress in tort and not the ratemaking authority of the Commission. The supreme court responded:

> The General Assembly has vested the PSC with the sole and exclusive jurisdiction and authority to determine rates to be charged by public utilities. Ark. Code Ann. § 23-4-201(a)(1) (1987). It is further clear that this jurisdiction extends over rate matters and disputes involving public rights between consumers and public utilities but not to private rights found in tort. Ark. Code Ann. § 23-3-119(a), (d), (f)(1) and (2) (1987); *see Ozark Elec. Coop. Corp. v. Harrelson,* 301 Ark. 123, 782 S.W.2d 570 (1990). Hence, to the extent that this matter involves a dispute over rates charged by Arkla, its resolution falls within the purview and jurisdiction of the PSC.

*Id.* at 194, 907 S.W.2d at 743.

■ We recognize that the Commission is a creature of the legislature and must act within the power conferred upon it by legislative act. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 267 Ark. 550, 593 S.W.2d 434 (1980). We note, however, that the legislature has chosen not to limit the Commission's jurisdiction to the powers expressly set out in the public utility statutes. Arkansas Code Annotated section 23-2-301 (1987) also defines the Commission's authority, and it provides:

> The commission is vested with the power and jurisdiction, and it is made its duty, to supervise and regulate every public utility defined in section 23-1-101 and to do all things, whether specifically designated in this act, that may be necessary or expedient in the exercise of such power and jurisdiction, or in the discharge of its duty.

■ Especially in proceedings before the Commission where the actions of a utility are likely to affect numerous ratepayers, it is only logical to conclude that the legislature intended to give the Commission the authority to hear class actions where it may be "necessary and expedient" in the exercise of its power and jurisdiction or in the discharge of its duty. In his administrative law treatise, Professor Schwartz discusses the importance of class actions in administrative settings:

> In consumer cases . . . the plaintiff is one among many affected by the agency action; his suit, if successful, vindicates not only his personal interest but, even more so, the collective interest of all other consumers. The same is true in the environmental cases discussed in the preceding two sections. Not surprisingly, therefore, consumer and environmental plaintiffs have made use of the class action as a vehicle for challenging agency action. The potential of the class action in administrative law has been pointed out by Justice Douglas: "in our society that is growing in complexity there are bound to be innumerable people in common disasters, calamities, or ventures who would go begging for justice without the class action but who could with all regard to due process be protected by it. Some of these are consumers whose claims may seem *de minimis* but who alone have no practical recourse for either remuneration or injunctive relief. Some may be environmentalists who have no photographic development plant about to be ruined because of air pollution by radiation but who suffer perceptibly by smoke, noxious gases, or radiation. Or the unnamed individual may be only a ratepayer being excessively charged by a utility." [Dissenting opinion in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 185-86 (1974).]
>
> The class action as a vehicle for securing judicial review has been recognized in cases dealing with challenges to utility rates, actions affecting welfare payments and public housing, and environmental actions . . . .

Bernard Schwartz, *Administrative Law* § 8.21 at 480-81 (2d ed. 1984). To hold that the Commission is without authority to hear class actions ignores the legislature's express grant to the Commission "to do all things, whether specifically designated in the act . . . ." Section 23-2-301.

Although the Commission is correct in its assertion that Arkansas Rule of Civil Procedure 23, which provides for class actions, does not govern proceedings before the Commission, we do not agree that the Commission cannot apply it where it "may be necessary or expedient" in the exercise of its power and jurisdiction to regulate every public utility. *See* section 23-2-301. Furthermore, this court has become more inclined to apply rules of civil procedure to administrative actions. *See Bryant v. Arkansas Public Service Commission*, 53 Ark. App. 114, 919 S.W.2d 522 (1996), where this court noted that Rule 10.02(c) of the Commission Rules of Practice and Procedure is a reflection of the clear standard adopted in Arkansas courts that requires fact pleading and cited Rules 8(a)(1) and 12(b)(6) of the Arkansas Rules of Civil Procedure. *See also Second Injury Fund v. Mid-State Construction Company*, 16 Ark. App. 169, 698 S.W.2d 804 (1985), where this court held that, although the Arkansas Rules of Civil Procedure are not binding in workers' compensation cases, Rule 20 of the Arkansas Rules of Civil Procedure would seem to provide appropriate guidance in Second Injury Fund cases.

We also disagree with the Commission's holding that *Bryant v. Southwestern Bell Telephone Co., supra,* and *Latin v. Southwestern Bell, supra,* control our decision here. In *Bryant,* the Commission dismissed a class action complaint brought by the Attorney General. The Commission had held that the complaint failed to state a cause of action and that it lacked jurisdiction to hear a class action. The Attorney General appealed the Commission's decision in *Bryant v. Arkansas Public Service Commission, supra,* and while this court affirmed the Commission's holding that the complaint failed to state a cause of action, we did not render a decision on the class action issue. In *Latin,* the complainants attempted to bring a class action suit before the Commission, arguing that Southwestern Bell was wrongfully charging them and other first-time customers living in Arkansas Village a one-time excess construction charge as a precondition to the receipt of telephone service. The Commission held that, although it had subject-matter jurisdiction over the proceeding pursuant to section 23-3-119, it lacked jurisdiction and authority to permit it to proceed as a class action. No party appealed the Commission's decision, and it is not controlling here.

Nor are we persuaded by AWG's citations to decisions of the Michigan Public Service Commission.

In conclusion, we hold that the legislature's grant of authority to the Commission is clearly broad enough to allow it to hear a complaint brought as a class action. We are cognizant of the fact that this decision may to some degree be regarded as precedent, but the topic behind it is not novel. It comports with judicial economy and balances consumers' ability to seek review with the utilities' ability to alter rates. The legislative intent bolsters this idea, and the economy of scale that is evident in utility rate-making is furthered by this decision.

We reverse and remand on this issue with directions to the Commission to determine whether appellants' action meets all of the prerequisites and necessary criteria as may be established by the Commission to qualify as a maintainable class action. In doing so, we emphasize that we are not holding by this opinion that the Commission must allow appellants' complaint to proceed as a class action. Our holding is expressly limited to our finding that the Commission has the authority to hear a class action. Whether appellants' action qualifies for class certification is left to the broad discretion of the Commission.

We do not, however, agree with appellants' second point that the Commission erred in holding that it did not have power to award them attorneys' fees from a common fund created by commission-ordered refunds. Appellants acknowledge that the American and Arkansas rule is that attorneys' fees are not chargeable as costs in litigation unless specifically permitted by statute. *See City of Hot Springs v. Creviston*, 288 Ark. 286, 705 S.W.2d 415 (1986). Nevertheless, they contend that Arkansas has firmly adopted the "common fund" doctrine, which permits recovery of attorneys' fees when a class action results in the recovery of a common fund.

The supreme court discussed the common-fund doctrine in *Bradshaw v. Bank of Little Rock*, 76 Ark. 501, 504, 89 S.W. 316, 317 (1905): "[W]hen many persons have a common interest in a fund, and one of them for the benefit of all brings a suit for its preservation, and retains counsel at his own cost, a court

of equity will order a reasonable amount to be paid to him out of the funds in the hands of the receiver in reimbursement of his outlay." (quoting *Davis v. Bay State League*, 158 Mass. 434, 33 N.E. 434 (1893)). *See also Marlin v. Marsh & Marsh*, 189 Ark. 1157, 76 S.W.2d 965 (1934); *Valley Oil Co. v. Ready*, 131 Ark. 531, 199 S.W. 915 (1917). In *Bradshaw v. Bank of Little Rock*, the supreme court awarded attorney's fees from a common fund, holding that it was just and equitable that the cost of securing the receiver, including reasonable attorney's fees, should be borne by all the creditors, in proportion to the amount realized by them. A court of equity is not incompetent to grant an award of costs and attorney's fees to a taxpayer out of a common fund established because of his efforts in a taxpayer suit on behalf of himself and other taxpayers to recover misappropriated county funds. *See Crittenden County v. Williford*, 283 Ark. 289, 675 S.W.2d 631 (1984). Appellants argue that, because they brought suit against AWG on behalf of themselves and all others similarly situated to establish a fund for the amount that AWG overcharged its ratepayers, it follows that they are entitled to attorneys' fees from the common fund if their litigation is successful. They contend that their case is analogous to *Powell v. Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980).

In *Powell*, the appellees successfully brought an action against the appellants (the mayor and aldermen of North Little Rock and the manager of the North Little Rock Electric Department), alleging that the city of North Little Rock improperly charged their electrical customers $639,266. The chancery court granted the appellees judgment and later modified its decree to require the city to bear all costs of the refund. The chancellor also awarded the appellees attorneys' fees of $95,884. On appeal, the appellants argued that the appellees' attorneys must recover on their contract with the appellees and could not recover in *quantum meruit* and that a reasonable amount of attorneys' fees should not exceed five percent of the total recovery of the taxpayer action. In affirming the award, the supreme court noted that the action was a class action, which resulted in the recovery of a substantial amount which constituted a common fund, and that the allowance of attorneys' fees from a common fund established or augmented

through the efforts of the attorneys to whom the fee is allowed is a well-recognized practice and is proper. In addressing the amount of the fee, the supreme court held:

> [W]e are unable to say that there was any abuse of discretion in the allowance of attorneys' fees in this case, which we should have to do in order to reverse or modify that award. An important factor in our consideration of the fee allowance in this case is the realization that inadequate compensation will cause attorneys who are competent to handle this type of litigation to shun it, or if they accept it, fail to devote sufficient time to adequately prepare or present the case. This is an appropriate consideration in matters of this sort. *Old Republic Insurance Co. v. Alexander*, 245 Ark. 1029, 436 S.W.2d 829. The individual rate payer ordinarily cannot afford to employ counsel because attorneys' fees and other expenses could be expected to exceed his prospective recovery. If attorneys do avoid employment such as that accepted by the attorneys in this case because they cannot expect to be adequately compensated, even if they are successful, there would be few cases where excessive charges would ever be refunded. The fact that no one who is the beneficiary of the recovery is complaining about the award is not without significance. The standing of appellants in this matter is not clear, even though the abstract of the record does not reveal that it was ever challenged in the trial court.

*Powell, supra,* at 491, 592 S.W.2d at 111.

Appellants contend that, because the facts in *Powell* are analogous to their suit, in that they both involve an action on behalf of ratepayers seeking refunds of overpayments, it follows that they are also entitled to attorneys' fees. They note that, prior to the adoption of the statute granting to the Commission primary jurisdiction in suits against utilities, the original forum for adjudication against public utilities was in the courts. They also emphasize that, in those actions, the courts would have had equitable jurisdiction to award attorneys' fees pursuant to the common-fund doctrine. They further note that the legislature has vested the Commission with quasi-judicial jurisdiction to adjudicate public rights and claims, *see* section 23-3-119(f)(3), and that the Commission has been granted broad powers by the legislature "to do all things . . . that may be necessary or expedient in the exercise of such power

and jurisdiction" in regulating public utilities. Section 23-2-301. They conclude that, because the Commission has been given quasi-judicial discretion and has replaced courts in proceedings against public utilities, the Commission has the same equitable power to award attorneys' fees.

In response to appellants' arguments, the Commission points out that the common-fund doctrine is an equitable remedy, *see Bradshaw, supra,* that it has no applicability to a Commission proceeding, and that the supreme court has held that attorneys' fees may not be paid out of a refund due ratepayers. *See City of Fort Smith v. Southwestern Bell Tel. Co.,* 220 Ark. 70, 247 S.W.2d 474 (1952). In that case, Southwestern Bell filed a petition for a rate increase with the Commission. Pursuant to statute, the Commission suspended Southwestern Bell's rate schedules and its proposed rates were put into effect after it filed a bond with the Commission to insure any refunds that were ordered. The appellants, ten cities that were served by Southwestern Bell, objected to the increase. After Bell's petition was granted and the appellants' petition for rehearing was denied, they filed a petition for review in circuit court as prescribed by Ark. Stat. Ann. § 73-233. The circuit court denied their petition, and they appealed to the supreme court. The supreme court remanded the case to the circuit court to remand to the Commission with directions to reduce Southwestern Bell's rate increase by approximately $400,000 per year and order refunds to be made by Southwestern Bell. The appellants then petitioned the supreme court for rehearing, requesting attorneys' fees. The supreme court responded:

> The second point presented by the Cities [appellants] is whether an attorneys' fee may be paid, to the attorneys for the Cities, out of the amount to be refunded to the subscribers. We hold that such attorneys' fee cannot be so paid. The refunds belong to the subscribers, and not to the Cities; and there is nothing in this record to show that the subscribers have agreed for a fee to be paid the attorneys for the Cities. We find no statutory authority for the request by the Cities. In *Miller v. Ft. Smith,* case (*Peavy* [sic] *v. Pulaski County,* 103 Ark. 601, 148 S.W. 491):

> Statutes regulating costs in litigation and fees of officers are to be strictly construed, "and no officer is entitled to fees, taxed as costs in cases unless there is a statute authorizing it."

> Even though the attorneys for the Cities have rendered valuable services, we cannot order them to be paid out of the money due the subscribers. We must presume that if the attorneys are special counsel, they have contracts for their fees; or if they are elected city attorneys, that they are cognizant of the provisions of section 19-912, section 19-1015 and section 19-1025 Ark. Stats. Therefore, we deny the second portion of the Cities' request.

*City of Fort Smith, supra,* at 92-93, 247 S.W.2d at 486.

■ We agree with appellants that *City of Fort Smith* is not controlling here. Although the supreme court held in that case that attorneys' fees cannot be paid from rate refunds, it is unclear to us from the opinion whether the court was basing its decision on its finding that there was no evidence that the ratepayers agreed to the fees or because the attorneys requesting the fees were the cities' attorneys, who serve the public and, therefore, "must be content with the compensation provided by the plain letter of the law.'" *See Peay v. Pulaski County,* 103 Ark. 601, 610, 148 S.W. 491, 494 (1912) (quoting *Fanning v. State,* 47 Ark. 422, 2 S.W. 70 (1886)). Nevertheless, we must agree with the Commission that it is without authority to award attorneys' fees under the common-fund doctrine because it is clear to us that the legislature has considered and declined to authorize the Commission to award attorneys' fees.

■ Subsection (d) of section 23-3-119 makes no provision for attorneys' fees, although it does specifically provide the Commission with authority to "mandate monetary refunds and billing credits. . . ." In Act 758 of 1985, the legislature broadened the Commission's powers to hear ratepayer complaints. However, the legislature declined to extend these powers to allow attorneys' fees to be awarded. House Bill 393, which, as amended, became Act 758, originally provided:

> (d) The Commission may, in its discretion, award costs, fees, expenses, and attorneys fees, or any combination thereof, in the following manner:

(1) To the defendant utility, if the Commission finds that the complaint was brought maliciously or frivolously.

(2) To the complainant, if the Commission finds that the defendant acted in bad faith, in violation of any statute, law, rule, regulation, or Commission order, to the detriment of the complainant.

Section (d) of Bill 393 was later amended to read:

(d) The Commission shall then have the authority, upon timely notice, to conduct investigations and public hearings and to mandate monetary refunds, billing credits, or order appropriate prospective relief as authorized or required by law, rule, regulation, or order. The jurisdiction of the Commission in such disputes is primary, and shall be exhausted before a court of law or equity may assume jurisdiction. Provided, that the Commission shall not have the authority to order payment of damages, or to adjudicate disputes in which the right asserted is a private right found in the common law of contracts, torts, or property.

This amendment, which became part of Act 758, deleted the attorneys' fee provision. The deletion of the attorneys' fee provision supports the Commission's holding that the legislature intended not to confer upon the Commission the power to award attorneys' fees. An administrative interpretation is to be regarded as highly persuasive. *Omega Tube & Conduit, supra.* The manner in which a law has been interpreted by executive and administrative officers is to be given consideration and will not be disregarded unless it is clearly wrong. *Id.* For this same reason, we do not find appellants' reliance on decisions from other jurisdictions persuasive.

Although logical and equitable reasons are advanced here for payment of attorneys' fees under the common-fund doctrine, our statutory scheme and the holdings of the supreme court that fees are only allowed in specific situations constrain us from making new law in these circumstances. We recognize that, by this holding, ratepayers will have a difficult, if not impossible, task of funding legal counsel to represent them in actions against utilities. We are unable to broaden the law to extend attorneys' fees to these circumstances, as this is a legislative function.

We reverse and remand on appellants' first point and affirm the Commission's decision on appellants' second point.

Affirmed in part; reversed and remanded in part.

ROBBINS, C.J., and JENNINGS, STROUD, and MEADS, JJ., agree.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I would have been happy to reverse the Public Service Commission's decision on appellant's second point. However, I am forced to conclude, as Judge Rogers has written in the majority opinion, that the Arkansas General Assembly apparently decided not to confer the power to award attorneys' fees to the Commission when it enacted Act 758 of 1985. I cannot ignore the plain fact that the General Assembly deleted language in House Bill 393 that would have authorized the Commission to award attorneys' fees when it enacted Act 758.

Nevertheless, I am convinced that the Commission's power to regulate public utilities will only be enhanced if the legislature authorizes it to award attorneys' fees in appropriate cases. The ordinary ratepayer will almost always have too small a pecuniary interest at stake to justify the significant cost of challenging an allegedly excessive utility rate. Yet, such challenges, when successful, produce benefits to a range of ratepayers and serve the public interest in fair utility rates. Unless the legislature confers the power to award attorneys' fees, it is obvious that potential challenges to allegedly excessive utility rates will go unasserted.